# EXHIBIT A

# Case #2019CI06848

**Name**:

**Date Filed** : 4/3/2019

**Case Status** : PENDING

**Litigant Type** : DEFENDANT

**Court** : 131

**Docket Type** : DEBT/CONTRACT

**Business Name** : 2019CI06848

**Style** : TOP CLASS HOSPITALITY LLC

**Style (2)** : vs AMGUARD INSURANCE COMPANY ET AL

# Case History

*Currently viewing all records*

| Sequence | Date Filed | Description |
|----------|-----------|-------------|
| P00008 | 5/17/2019 | ORIGINAL ANSWER OF<br>AMGUARD INSURANCE COMPANY MOTION TO TRAN<br>SFER VENUE AND SUBJECT THERETO |
| P00007 | 5/8/2019 | AFFIDAVIT OF<br>ALBERTO CASAS LICON OF SERVICE (AMENDED) |
| P00006 | 4/29/2019 | AFFIDAVIT OF<br>TRACY JONES |
| S00002 | 4/8/2019 | CITATION<br>DAVID NESBIT<br>ISSUED: 4/8/2019 RECEIVED: 4/24/2019<br>EXECUTED: 4/26/2019 RETURNED: 5/1/2019 |
| S00001 | 4/8/2019 | CITATION<br>AMGUARD INSURANCE COMPANY<br>ISSUED: 4/8/2019 |
| P00005 | 4/4/2019 | REQUEST FOR SERVICE AND PROCESS |
| P00004 | 4/4/2019 | SERVICE ASSIGNED TO CLERK 3 |
| P00003 | 4/3/2019 | PETITION |
| P00002 | 4/3/2019 | CIVIL CASE INFORMATION SHEET |
| P00001 | 4/3/2019 | JURY FEE PAID |

FILED
4/3/2019 4:48 PM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Victoria Angeles

Case 5:19-cv-00558-JKP-RBF   Document 1-1   Filed 05/24/19   Page 4 of 101

Cause No. **2019CI06848** _____

| | | |
|---|---|---|
| TOP CLASS HOSPITALITY, LLC | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | BEXAR COUNTY, TEXAS |
| | § | |
| AMGUARD INSURANCE COMPANY, | § | |
| and DAVID NESBIT | § | |
| *Defendants.* | § | 131st |
| | § | _____JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION & JURY DEMAND

Plaintiff TOP CLASS HOSPITALITY, LLC ("Top Class" or "Plaintiff") files this Original Petition against AMGUARD INSURANCE COMPANY ("AmGuard" or "Carrier") and DAVID NESBIT ("Nesbit") (Collectively "Defendants") and would respectfully show the following:

### Discovery Control Plan

1.      Plaintiff intends to conduct discovery under Level 2 of Texas Rule of Civil Procedure 190.

### Parties

2.      Plaintiff, Top Class Hospitality, LLC is a domestic limited liability company located and operating in the State of Texas.

3.      Upon information and belief, AmGuard is a foreign fire and casualty insurance company engaged in the business of insurance in Texas, operating for the purpose of accumulating monetary profit.  AmGuard regularly conducts the business of insurance in a systematic and continuous manner in the State of Texas.  AmGuard may be served with process through **CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.**

4.      Upon information and belief, David Nesbit is an individual residing and working in Bexar County, Texas.  Mr. Nesbit may be served with process at **29616 No Le Hace Drive, Fair Oaks Ranch, Bexar County, Texas, 78015**.

Copy from re:SearchTX

## Venue & Jurisdiction

5.      Venue is proper in Bexar County under TEX. CIV. PRAC. & REM. CODE section 15.002(a)(2) because Nesbit, a natural person, resides in Bexar County.

6.      Plaintiff seeks damages within the jurisdictional limits of this Court. At this time, Plaintiff seeks monetary relief in an amount over $1,000,000. Plaintiff reserves the right to modify the amount and type of relief sought in the future.

## Factual Background

*The Property*

7.      Top Class Hospitality, LLC owns and operates the Holiday Inn Express hotel located at 1436 N. Business IH 35, New Braunfels, Texas 78130, in Comal County, Texas (the "Property"). The four-story hotel consists 47,800 square feet of finished space.



Copy from re:SearchTX

***The Policy***

8.      Prior to August 25, 2017, Plaintiff paid annual premiums, assessments, fees, surcharges, and taxes to AmGuard to acquire comprehensive commercial insurance coverage for the Property under Policy No. TOBP845751.

9.      The Policy provides coverage for Plaintiff, for covered damages that occur during the Policy Period, from March 20, 2017 through March 20, 2018.   In exchange for Plaintiff's premium payment, the Plaintiff's Policy includes the following limits and coverages, in relevant part:

**LOCATION: 001   BUILDING: 001**
**1436 N Business Ih 35**
**New Braunfels, TX 78130-3241**
**Comal County**

**Property Deductible: $7,500**
**Optional Coverages/Glass Deductible: $500**
**Classification: 69151 - Hotels - Preferred - No Restaurant**

**COVERAGES:**

| | |
|---|---|
| **Awnings Coverage** | |
| Limit | $2,500 |
| **Building Coverage** | |
| Limit | $7,800,000 |
| Valuation | Replacement Cost |
| Inflation Guard % | 2 |
| **Business Personal Property Coverage** | |
| Limit | $1,200,000 |
| Seasonal Increase Percent | 25 |
| Valuation | Replacement Cost |
| **Business Income & Extra Expense** | |
| Limit | Actual Loss Sustained up to 12 Months |

10.     As evidenced by the Declarations Page and confirmed in the Policy provisions, the Policy provides coverage to the Property's physical structure on a replacement cost value basis for damages caused by wind and hail up to $7,800,000.  Further, the Policy provides coverage for Business Personal Property for over $1,000,000.  *See* Ex. A, Policy, at Declarations Pages.

Copy from re:SearchTX

***Hurricane Harvey***

11.     On or about August 25, 2017, Hurricane Harvey, recognized as one of the most devastating natural disasters in United States history, made landfall on the Texas coast as a Category 4 hurricane with wind speeds of up to 150 miles per hour. Hurricane Harvey's wind and rain continued to travel through the southeast part of Texas, inflicting billions of dollars in damages to private and public property in its path. The Texas Division of Emergency Management incurred more than $439 million in costs associated with debris removal, public property damage, and police/EMS response immediately after Harvey. Texas Governor Greg Abbott has estimated that Hurricane Harvey's damages will total an historic $180 billion.

12.     Harvey's destruction, however, was not limited to the Texas Coast. In fact, Harvey's destructive path continued inland to the Hill Country, producing extreme winds and rain that caused significant property damage. Indeed, those winds caused significant damage to the Property. Sizeable portions of the roofs and exterior were compromised by wind, and as a result, there was also substantial interior damage to the buildings.

***Plaintiff makes insurance claim for damages***

13.     The following photographs taken after Harvey depict some of the damages:

Page **4** of **14**

Copy from re:SearchTX



14.     The Property – especially the roofs – was substantially damaged by the storm.  Yet as devastating as the physical damage was, Plaintiff felt fortunate to be protected by the insurance coverage they had procured to insure the Property from precisely this type of catastrophe. Immediately after the storm, Plaintiff promptly filed a claim with AmGuard, alerting them to the extensive damages.  This sense of security, borne of pricey contractual relationship, would prove illusory as Defendants began their investigation and handling of the claim.

Copy from re:SearchTX

***Plaintiff works hard to document its damages for Defendants, but AmGuard unreasonably refuse to pay.***

15.     Amguard's claim-handling process resulted in a wrongful refusal to pay and omitted a wealth of facts, physical evidence, obvious wind damages, and meteorological data supporting Plaintiff's claim.  Defendants unreasonably pinned the losses on anything but the wind, an action designed to save AmGuard millions of dollars in damages to the Property and the business.

16.     AmGuard assigned defendant David Nesbit with Vericlaim, Inc. to the claim.  Mr. Nesbit never provided a scope of damages or an estimate. Mr. Nesbit subsequently engaged Rimkus Consulting Group, Inc. to employ representatives to handle and adjust the claim. Those persons were improperly trained as to their responsibilities, and were instead directed to minimize – and in fact, did minimize – claim payments and delay the reconstruction project.

17.     Kenneth Vogan from Rimkus completed a site inspection for Vericlaim.  Vogan and the other adjusters assigned to the claim were unqualified and incapable of adequately assessing the damages to this type of commercial Property and were the source of many delays throughout the claim process. Defendants continued to delay the claim resolution and did not provide the insured with answers.

18.     After these cursory and substandard inspections, and more than five months after the Property was damaged, AmGuard denied the claim on February 12, 2018. But only after Top Class requested a structural engineer assess the damages did AmGuard admit there was windstorm damage to the stucco and water damage in the maintenance room. As a result, AmGuard then issued a minimal payment under the corresponding policy.

19.     After issuing this minimal payment, AmGuard issued another denial letter on October 22, 2018 based on the findings of Rimkus engineer, Robert Dinjar. Among other things, Mr. Dinjar stated "there was no storm-related damage to the roof covering," "improperly installed

Copy from re:SearchTX

fasteners," and other damage caused by "storm events that have occurred since the building was constructed." This conclusory opinion from a company who consistently works for insurance carriers ignores the substantial facts and evidence confirming covered damage.

20.      AmGuard's own agent had confirmed on June 4, 2018 on behalf of AmGuard that there was substantial wind damage to the property but AmGuard avoided these admissions. AmGuard has ignored the scores of facts, witnesses and meteorological data supporting the covered claim. This deceptive claim handling and outright false denials have crippled Top Class's ability to operate their business. Top Class has cooperated throughout the claims process.

21.      AmGuard issued an initial declination of the claim on February 12, 2018.  Only after Top Class requested a structural engineer assess the damages did AmGuard admit there was windstorm damage to the stucco and water damage in the maintenance room.  As a result, AmGuard issued a minimal payment under the corresponding policy.  AmGuard then issued a denial letter on October 22, 2018 based on the findings of Rimkus engineer, Robert Dinjar.  Mr. Dinjar states there was no storm related damage to the roof and there was improper installation of the windows.

22.      Nineteen months after the Hurricane Harvey winds severely damaged this property, based on inadequate investigation, wrongful delays, and refusals to fully pay for reasonably clear damages, AmGuard has not issued a full payment. To this day, due to Defendants outcome-oriented, inadequate, and haphazard investigation, AmGuard has refused to pay for covered damages under the Policy.

***AmGuard responds to Plaintiff's demand letter with more refusals to accept responsibility***

23.      On June 1, 2017, Governor Abbott signed House Bill 1774 into law as Section 542A of the Texas Insurance Code. This new law was sponsored by approximately sixty state representatives and senators and contains important consumer protections against a variety of

Copy from re:SearchTX

unscrupulous practices. Particularly, Section 542A.003 requires detailed, comprehensive pre-suit notice that is intended to make the claims and litigation processes more transparent and potentially even avoid unnecessary lawsuits. Upon receiving notice, an insurer has a right to conduct an inspection, and even make an offer to avoid litigation. When utilized properly, Section 542A should assist business consumers like Plaintiff to avoid protracted litigation over a clear claim.

24.     In compliance with Section 542A.003, Plaintiff gave its pre-suit notice to Defendants on January 28, 2019.  The pre-suit notice provided a comprehensive outline of Plaintiff's claim and damages, quantified its loss, and even offered to waive a formal claim for attorneys' fees if the contractual amounts were paid promptly.

25.     AmGuard responded to the demand letter on March 29, 2019 but refused to acknowledge its own wrongdoing.

### FIRST CAUSE OF ACTION---Violations of Texas Insurance Code

26.     Plaintiff re-alleges and incorporates each allegation contained in the previous Paragraphs of this Petition as if fully set forth herein.

27.     Defendants failed to attempt to effectuate a prompt, fair, and equitable settlement of a claim with respect to which liability has become reasonably clear, in violation of Texas Insurance Code Section 541.060 (a)(2)(A).

28.     Defendants failed to adopt and implement reasonable standards for prompt investigation of claims arising under its policies.

29.     Defendants failed to provide promptly a reasonable explanation, in relation to the facts or applicable law, for the denial of a claim, in violation of Texas Insurance Code Section 541.060 (a)(3).

Copy from re:SearchTX

30.     Defendants refused to pay the claims without conducting a reasonable investigation with respect to the claims, in violation of Texas Insurance Code Section 541.060 (a)(7).

31.     Defendants misrepresented the insurance policies under which it affords property coverage to Plaintiff, by making an untrue statement of material facts, in violation of Texas Insurance Code Section 541.061 (1).

32.     Defendants misrepresented the insurance policies under which it affords property coverage to Plaintiff by failing to state a material fact that is necessary to make other statements made not misleading, in violation of Texas Insurance Code Section 541.061(2).

33.     Defendants misrepresented the insurance policies under which it affords property coverage to Plaintiff by making a statement in such manner as to mislead a reasonably prudent person to a false conclusion of material facts and failing to disclose a matter required by law to be disclosed, in violation of Texas Insurance Code Section 541.061 (3) and Texas Insurance Code Section 541.002 (1).

34.     Defendants knowingly committed the foregoing acts, with actual knowledge of the falsity, unfairness, or deception of the foregoing acts and practices, in violation of Texas Insurance Code Section 541.002 (1).

## SECOND CAUSE OF ACTION---Prompt Payment of Claim

35.     Plaintiff re-alleges and incorporates each allegation contained in the previous Paragraphs of this Petition as if fully set forth herein.

36.     AmGuard failed to acknowledge receipt of the claim in violation of Texas Insurance Code Section 542.055 (a)(1).

37.     AmGuard failed to timely commence investigation of the claim or to request from Plaintiff any additional items, statements or forms that the Defendants reasonably believe to be required

Copy from re:SearchTX

from Plaintiff in violation of Texas Insurance Code Section 542.055 (a)(2)-(3).

38.     AmGuard failed to notify Plaintiff in writing of the acceptance or rejection of the claim not later than the 15th business day after receipt of all items, statements and forms required by the Defendants in violation of Texas Insurance Code Section 542.056(a). The delay was egregious, unnecessary, and wholly caused by the Defendants.

39.     AmGuard delayed payment of Plaintiff's claim in violation of Texas Insurance Code Section 542.058(a).

40.     Each of the actions described herein were done "knowingly" as that term is used in the Texas Insurance Code and were producing cause of Plaintiff's damages.

**THIRD CAUSE OF ACTION---Statutory Interest**

41.     Plaintiff re-alleges and incorporates each allegation contained in the previous Paragraphs of this Petition as if fully set forth herein.

42.     Plaintiff makes a claim for statutory interest penalties along with reasonable attorneys' fees for violation of Texas Insurance Code Subchapter B pursuant to Texas Insurance Code Section 542.060.

**FOURTH CAUSE OF ACTION---Breach of Contract**

43.     Plaintiff re-alleges and incorporates each allegation contained in the previous Paragraphs of this Petition as if fully set forth herein.

44.     As outlined above, AmGuard breached its contract with Plaintiff by refusing to pay for covered damages under the Policy.  As a result of AmGuard's breach, Plaintiff suffered legal damages.

**FIFTH CAUSE OF ACTION---Breach of duty of good faith & fair dealing**

45.     Plaintiff re-alleges and incorporates each allegation contained in the previous Paragraphs of

Copy from re:SearchTX

this Petition as if fully set forth herein.

46.     AmGuard as the property coverage insurers, had a non-delegable duty to deal fairly and in good faith with Plaintiff in the processing of the claim.  AmGuard breached this duty by refusing to properly investigate and effectively denying insurance benefits.  AmGuard knew or should have known that there was no reasonable basis for denying or delaying the required benefits.  As a result of AmGuard's breach of these legal duties, Plaintiff suffered legal damages.

### SIXTH CAUSE OF ACTION---Punitive Damages for Bad Faith

47.     Plaintiff re-alleges and incorporates each allegation contained in the previous Paragraphs of this Petition as if fully set forth herein.

48.     AmGuard acted fraudulently and with malice (as that term is legally defined) in denying and delaying Plaintiff's claim for benefits.  Further, AmGuard had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiff.

### SEVENTH CAUSE OF ACTION---Violations Of Texas DTPA

49.     Plaintiff re-alleges and incorporates each allegation contained in the previous Paragraphs of this Petition as if fully set forth herein.

50.     The Deceptive Trade Practices-Consumer Protection Act (DTPA) provides additional protections to consumers who are victims of deceptive, improper, or illegal practices. AmGuard's violations of the Texas Insurance Code create a cause of action under the DTPA. AmGuard's violations of the Texas Insurance Code, as set forth herein, specifically violate the DTPA as well.  AmGuard have also acted unconscionably, as that term is defined under the DTPA.

51.     Each of the actions described herein were done "knowingly" as that term is used in the

Copy from re:SearchTX

DTPA and were a producing cause of Plaintiff's damages.

## KNOWLEDGE

52.    Each of the actions described herein were done "knowingly" as that term is used in the Texas Insurance Code and were a producing cause of Plaintiff's damages.

## RESULTING LEGAL DAMAGES

53.    Plaintiff is entitled to the actual damages resulting from the Defendants' violations of the law.   These damages include the consequential damages to its economic welfare from the wrongful denial and delay of benefits including loss of the property and business; and the other actual damages permitted by law.   In addition, Plaintiff is entitled to exemplary damages.

54.    As a result of Defendants' acts and/or omissions, Plaintiff has sustained damages in excess of the minimum jurisdictional limits of this Court.

55.    Plaintiff is entitled under law to the recovery of prejudgment interest at the maximum legal rate.

56.    Defendants' knowing violations of the Texas Insurance Code and DTPA entitle Plaintiff to the attorneys' fees, treble damages, and other penalties provided by law.

57.    Plaintiff is entitled to statutory interest as damages under the Texas Insurance Code 542.060(c).

58.    As a result of Defendants' acts and/or omissions, Plaintiff has sustained damages in excess of the jurisdictional limits of this Court.

59.    Plaintiff is entitled under law to the recovery of prejudgment interest at the maximum legal rate.

60.    Plaintiff is entitled to the recovery of attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code §38.001, the Texas Insurance Code 542.060(a)-(b), the Business & Commerce Code

Copy from re:SearchTX

§17.50 and Tex. Civ. Prac. & Rem. Code §37.009.

## Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully request that Plaintiff have judgment against Defendants for actual damages in excess of the minimum jurisdictional limits of this Court, pre- and post-judgment interest as allowed by law, costs of suit, and all other relief, at law or in equity, to which Plaintiff may be entitled.

Respectfully submitted,

RAIZNER SLANIA LLP

_____
JEFFREY L. RAIZNER
State Bar No. 00784806
ANDREW P. SLANIA
State Bar No. 24056338
AMY B. HARGIS
State Bar No. 24078630
BEN WICKERT
State Bar No. 24066290
efile@raiznerlaw.com
2402 Dunlavy Street
Houston, Texas 77006
Phone: (713)554.9099
Fax: (713)554.9098
**ATTORNEYS FOR PLAINTIFF**

Copy from re:SearchTX

## <u>JURY DEMAND</u>

*Plaintiff hereby demands a trial by jury, a right enshrined in the Constitution of the United States of America and the State of Texas and preserved by the sacrifices of many. The necessary jury fee has been paid.*

_____

**ANDREW P. SLANIA**

Page **14** of **14**

Copy from re:SearchTX

Top Class Hospitality LLC
1436 N Business Ih 35
New Braunfels, TX 78130-3241

EXHIBIT A

EXHIBIT A

Copy from re:SearchTX



**BUSINESSOWNER'S POLICY DECLARATIONS**

**AmGUARD Insurance Company**
**A Stock Company**

**Issued:** 03/20/2017

**Policy No.:**
TOBP845751

**Renewal of:** NEW

## POLICY INFORMATION PAGE

**[1]**    **Named Insured and Mailing Address**
Top Class Hospitality LLC
1436 N Business Ih 35
New Braunfels, TX 78130

**Additional Names of Insured**
DBA Holiday Inn Express & Suites New Braunfels

**[2]**    **Agency**
FD&S INSURANCE AGENCY, INC.
3734 Southpark Drive
Tyler, TX 75703

**[3]**    **Policy Period**
From March 20, 2017 to March 20, 2018, 12:01 AM, standard time at the insured's mailing address.

**[4]**    **Description of Business**
Hotels (except Casino Hotels) and Motels

**[5]**    **Coverage**
This policy consists of the Coverage Forms listed on the **Schedule of Forms and Endorsements (IIT SF 01 05).**

**[6]**    **Premium**
The premium shown below may be subject to adjustment.
| | |
|---|---|
| Certified Acts of Terrorism | $139.00 |
| TOTAL POLICY PREMIUM | $33,075.00 |
| TOTAL PAYABLE | $33,075.00 |

**[7]**    **Payment of Premium**
In return for your payment of premium, and subject to all terms of this policy, we agree with you to provide insurance as stated in this policy.



**Berkshire Hathaway**
**GUARD** Insurance Companies

**IIT DS 01 05**

P.O. Box A-H • 16 S. River Street • Wilkes-Barre, PA 18703-0020 • www.guard.com

EXHIBIT A

**Page 1 of 6**

Copy from re:SearchTX

**BUSINESSOWNER'S POLICY
DECLARATIONS**

Issued: 03/20/2017

| | |
|---|---|
| **Policy No.:** TOBP845751 | **Effective Date:** 03/20/2017 |

## SECTION I – PROPERTY COVERAGES AND LIMITS OF INSURANCE

**LOCATION: 001   BUILDING: 001**
**1436 N Business Ih 35**
**New Braunfels, TX 78130-3241**
**Comal County**

**Property Deductible: $7,500**
**Optional Coverages/Glass Deductible: $500**
**Classification: 69151 - Hotels - Preferred - No Restaurant**

**COVERAGES:**

| | |
|---|---|
| **Awnings Coverage** | |
| Limit | $2,500 |
| **Building Coverage** | |
| Limit | $7,800,000 |
| Valuation | Replacement Cost |
| Inflation Guard % | 2 |
| **Business Personal Property Coverage** | |
| Limit | $1,200,000 |
| Seasonal Increase Percent | 25 |
| Valuation | Replacement Cost |
| **Liability** | |
| IMPORTANT NOTE | THIS COVERAGE IS RATED BASED ON AN ESTIMATE AND IS SUBJECT TO AUDIT |
| Gross Sales at this Location | $2,300,000 |
| Limit | Included |
| **Accounts Receivable** | |
| On-Premises Limit | $25,000 |
| Off-Premises Limit | 25,000 |
| **Debris Removal** | |
| Limit | 25%/$10,000 |
| **Equipment Breakdown Coverage (HSB)** | |
| Inspection Contact Name | Nash Dhounasalia |
| Phone Number | 512-825-5511 |
| **Hotels/Motels Coverage** | |
| Lock Replacement | 2,500 |
| Web Sites (Business Income) | 7 day period or $50,000/$100,000 |
| Reward Payment | 5,000 |
| Credit Card Slips | 10,000 |
| Liability for Guests' Property | $1,000/$25,000 |
| Liability for Guests' Property in Safe Deposit Boxes | None |
| **Hotels/Motels Deluxe** | |
| Outdoor Property - Fences & Signs | $10,000/$30,000 |

**IIT DS 01 05**                    EXHIBIT A                    **Page 2 of 6**

Copy from re:SearchTX

**BUSINESSOWNER'S POLICY
DECLARATIONS**

Issued:  03/20/2017

| | |
|---|---|
| **Policy No.:**  TOBP845751 | **Effective Date:**  03/20/2017 |

| | |
|---|---|
| Outdoor Property - Radio & TV Antennas | $10,000/$30,000 |
| Outdoor Property - Outdoor Furniture & Decorative Structures | $10,000/$30,000 |
| Outdoor Property - Trees, Shrubs & Plants | $2,000/$25,000/$80,000 |
| Outdoor Property - Lawns | $5,000/$25,000/$80,000 |
| Personal Effects | $25,000 |
| Checked Coats & Bags | $5,000/$50,000/$100,000 |
| Guests Property (Property Coverage) | $10,000/$50,000 |
| **Money and Securities** | |
| On Premises Limit | $25,000 |
| Off Premises Limit | $25,000 |
| **Ordinance or Law - Increased Cost Of Construction** | |
| Limit | $10,000 |
| **Outdoor Property** | |
| Limit | $10,000 |
| **Outdoor Signs - Optional Coverage** | |
| Limit | $30,000 |
| **Protective Safeguards** | |
| Protective Safeguards | P-1|P-9B|P-2| |
| **Valuable Papers and Records** | |
| On-Premises Limit | $25,000 |
| Off-Premises Limit | $25,000 |
| **Water Back-up and Sump Overflow** | |
| Covered Property Limit | $10,000 |
| Business Income and Extra Expense Limit | $10,000 |

**IIT DS 01 05**                    EXHIBIT A                    **Page 3 of 6**

Copy from re:SearchTX

**BUSINESSOWNER'S POLICY
DECLARATIONS**

Issued:  03/20/2017

**Policy No.:**  TOBP845751                                  **Effective Date:**   03/20/2017

### SECTION II – LIABILITY COVERAGES AND LIMITS OF INSURANCE

**Each paid claim for the following coverages reduces the amount of insurance we provide during the applicable
annual period.  Please refer to Section II – Liability in the Businessowners Coverage form and any attached
endorsements.**

| Coverage | Limits of Insurance |
|---|---|
| Liability and Medical Expenses - Each Occurrence | $1,000,000 |
| General Aggregate (Other than Products and Completed Operations) | $2,000,000 |
| Products & Completed Operations Aggregate | $2,000,000 |
| Medical Expenses (Each Person) | $5,000 |
| Liability Property Damage Deductible | None |
| Liability Deductible - Bodily Injury | None |

**IIT DS 01 05**                                 EXHIBIT A                                 **Page 4 of 6**

Copy from re:SearchTX

**BUSINESSOWNER'S POLICY
DECLARATIONS**

Issued: 03/20/2017

**Policy No.:** TOBP845751      **Effective Date:** 03/20/2017

### POLICY WIDE COVERAGES AND LIMITS OF INSURANCE

**Appurtenant Structures**
| | |
|---|---|
| Limit | $50,000 combined Building/BPP |

**Business Income & Extra Expense**
| | |
|---|---|
| Limit | Actual Loss Sustained up to 12 Months |

**Damage To Premises Rented To You**
| | |
|---|---|
| Limit | $100,000 |

**Data Compromise**
| | |
|---|---|
| Section 1 - Response Expenses | - |
| Annual Aggregate Limit | $50,000 |
| Named Malware (Sec. 1) Sublimit | $50,000 |
| Forensic IT Review Sublimit | $5,000 |
| Legal Review Sublimit | $5,000 |
| PR Services Sublimit | $5,000 |
| Response Expenses Deductible | $1,000 |
| Section 2 - Defense & Liability | - |
| Annual Aggregate Limit | $50,000 |
| Named Malware (Sec. 2) Sublimit | $50,000 |
| Defense & Liability Deductible | $1,000 |

**Electronic Data**
| | |
|---|---|
| Limit | $10,000 |

**Employee Dishonesty**
| | |
|---|---|
| Limit | $25,000 |

**Fire Department Service Charge**
| | |
|---|---|
| Limit | $25,000 |

**Fire Extinguisher Systems Recharge Expense**
| | |
|---|---|
| Limit | $5,000 |

**Forgery or Alteration**
| | |
|---|---|
| Limit | Employee Dishonesty Limit |

**Fungi, Wet Rot, Dry Rot & Bacteria (Mold)**
| | |
|---|---|
| Property Limit | $15,000 |
| Business Income/EE Number of Days | 30 |
| Liability Coverage Option | Exclude Coverage |

**Glass Expense**
| | |
|---|---|
| Limit | Actual Loss Sustained |

**Hired Automobile**
| | |
|---|---|
| Limit | Included in Liability Limit |

**Interruption of Computer Operations**
| | |
|---|---|
| Limit | $10,000 |

**Loss by Theft of furs, fur garments, garments trimmed with fur**
| | |
|---|---|
| Limit | $2,500 |

**Loss by Theft of jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals**
| | |
|---|---|
| Limit | $5,000 |

**Loss by Theft of patterns, dies, molds and forms**
| | |
|---|---|
| Limit | $2,500 |

**Money Orders and "Counterfeit Money"**
| | |
|---|---|
| Limit | $1,000 |

**Newly Acquired Or Constructed Property - Buildings**
| | |
|---|---|
| Limit | 25% of Building Limit/Not more than $500,000/Bldg |

**Newly Acquired Or Constructed Property - Business Personal Property**
| | |
|---|---|
| Limit | $250,000 |

IIT DS 01 05      <span style="color:red">EXHIBIT A</span>      Page 5 of 6

Copy from re:SearchTX

**BUSINESSOWNER'S POLICY
DECLARATIONS**

Issued:  03/20/2017

---

**Policy No.:**  TOBP845751                          **Effective Date:**  03/20/2017

---

**Non-owned Automobile**
   Exposure                                Without Delivery Service
**Personal Effects**
   Limit                                   $5,000
**Personal Property Off Premises**
   Limit                                   $10,000
**Pollutant Clean Up and Removal**
   Limit                                   $10,000
**Preservation of Property**
   Limit                                   Within 30 Days
**Terrorism**
   Certified Acts                          Include Coverage

---

**IIT DS 01 05**                    <span style="color:red">EXHIBIT A</span>                    **Page 6 of 6**

Copy from re:SearchTX

**BUSINESSOWNERS POLICY DECLARATIONS**

Issued:  03/20/2017

**Policy No.:**  TOBP845751                          **Effective Date:**   03/20/2017

### SCHEDULE OF FORMS AND ENDORSEMENTS

| Form Number | Title |
|---|---|
| IIT DS 01 05 | Businessowners Policy Declarations |
| BP 00 03 01 10 | Businessowners Coverage Form |
| BP IN 01 01 10 | Businessowners Coverage Form Index |
| END SCHD | Schedule Of Forms And Endorsements |
| IL 99 00 08 13 | Authorization and Attestation |
| IL P 001 01 04 | U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice To Policyholder |
| PRIV POL | Privacy Policy |
| MORTGAGEE INFO | Mortgagee Info |
| BP 99 TX 09 16 | TX Policy Customizations |
| BP 01 18 11 13 | Texas Changes |
| BP 02 04 01 06 | Texas Changes - Amendment of Cancellation Provisions or Coverage |
| PN TX 01 01 15 | Texas Policyholder Notice - Complaint Numbers |
| PN TX 02 01 15 | Texas Policyholder Notice - Asbestos Exclusion |
| BP 04 04 01 10 | Hired Auto And Non-owned Auto Liability |
| BP 04 12 01 06 | Limitation Of Coverage To Designated Premises Or Project |
| BP 04 17 01 10 | Employment - Related Practices Exclusion |
| BP 04 30 01 06 | Protective Safeguards |
| BP 05 01 07 02 | Calculation Of Premium |
| BP 05 15 01 15 | Disclosure Pursuant To Terrorism Risk Insurance Act |
| BP 05 23 01 15 | Cap On Losses From Certified Acts Of Terrorism |
| BP 05 38 01 15 | Exclusion Of Other Acts Of Terrorism Committed Outside The United States; Cap On Losses From Certified Acts Of Terrorism |
| BP 05 42 01 15 | Exclusion Of Punitive Damages Related To A Certified Act Of Terrorism |
| BP 12 03 01 10 | Loss Payable Clauses |
| BP 14 05 01 10 | Additional Insured - Grantor Of Franchise |
| BP 99 04 01 10 | Equipment Breakdown Coverage |
| BP 99 109 01 15 | Texas Data Compromise Coverage |
| BP 99 110 01 15 | Texas Changes - Equipment Breakdown Coverage |
| BP 99 188 06 16 | Deductible Endorsement - Property |
| BP 99 20 01 10 | Hotels/Motels Coverage |
| BP 99 21 01 10 | Hotels/Motels Deluxe |
| BP 99 60 03 12 | Water Back-up and Sump Overflow |
| BP MANUSCRIPT | Businessowners Manuscript Endorsement |

**EXHIBIT A**

**THIS ENDORSEMENT AUTHORIZES THE POLICY.**

# AUTHORIZATION AND ATTESTATION

This endorsement authorizes the insurance contract between you and the insurance company subsidiary listed on the DECLARATIONS PAGE of your insurance policy.

In Witness Whereof, this page executes and fully attests to this policy.  If required by state law, the policy shall not be valid unless countersigned by our authorized representatives.

Authorizing signatures

Michael J. Dulin
General Counsel and Secretary

Sy Foguel, ACAS, FILAA
Chief Executive Officer and President

EXHIBIT A

Copy from re:SearchTX

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

IL P 001 01 04          © ISO Properties, Inc., 2004          Page 1 of 1

Copy from re:SearchTX

# Privacy Policy

We are committed to treating and using personal financial information about you and your employees responsibly. We will not disclose nonpublic, personal information about you and your employees to anyone except as permitted or required by law.

This disclosure is made on behalf of the following and applicable affiliates:

Berkshire Hathaway GUARD Insurance Companies

AmGUARD Insurance Company

We collect nonpublic, personal information from you about you and your employees to properly maintain and service your policy. This nonpublic, personal information may come from the following sources:

- Application Information and Other Forms. On the application for insurance or other forms completed by you, you provide us with most of the information we need to process policies and claims.

- Transaction Information. We may develop information about you and your employees based on transactions and experiences you have with us, our affiliates, or others.

- Third-Party Information. This is information that we receive to verify or supplement your application or claims.

**Disclosing Information**
In the course of conducting business and as permitted or required by law, we may share nonpublic personal information about you and your employees with our affiliated companies. We do not disclose any nonpublic, personal information about you and your employees to any nonaffiliated third parties, except for the conduct of our business or as permitted or required by law. Information may be supplied to others providing business services for us. Additionally, we may provide information for audit or research purposes or to law enforcement agencies to help us prevent fraud.

**Securing Information**
We restrict access to nonpublic personal information about you and your employees to our employees who need to know the information necessary to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with applicable regulations to guard the nonpublic, personal information of you and your employees.

A Current Copy of Our Privacy Policy is Always Available at our web site.

---

P.O. Box A-H • 16 S. River Street • Wilkes-Barre, PA 18703-0020 • www.guard.com
Telephone: 570-825-9900 • Customer Service Hotline: 800-673-2465

EXHIBIT A

Copy from re:SearchTX

**BUSINESSOWNERS POLICY
DECLARATIONS**

Issued:  03/20/2017

**Policy No.:**  TOBP845751                                    **Effective Date:**   03/20/2017

### MORTGAGE HOLDER INFORMATION

**LOCATION 001, BUILDING 001**
Jefferson State Bank
14614 Blanco Rd.
Dallas, TX 75216
Mortgage Account Number:
Rank:

EXHIBIT A

Copy from re:SearchTX

**BUSINESSOWNER'S**
**BP 99 TX 09 16**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# TX POLICY CUSTOMIZATIONS

This endorsement modifies insurance provided under the following:

BUSINESSOWNER'S COVERAGE FORM

The following is a summary of the coverages and limits provided by this endorsement.  For complete details on specific coverages, see the applicable coverage wording.  The limits of insurance stated in this endorsement apply unless higher limits are shown in the Declarations.

### SCHEDULE OF LIMIT CHANGES
#### Section I – Property

| Coverage | BP 00 03 Limit | Revised Limit |
|---|---|---|
| Accounts Receivable | $10,000 at premises<br>$5,000 not at premises | $25,000 at premises<br>$25,000 not at premises |
| Appurtenant Structures | n/a | $50,000 |
| Awnings | Included in Building Limit | $2,500 |
| Employee Dishonesty | Optional | $10,000 |
| Fire Department Service Charge | $2,500 | $25,000 |
| Forgery Or Alteration | $2,500 | $10,000 |
| Loss or Damage by Theft | | |
|     Jewelry, Watches, etc. | $2,500 | $5,000 |
| Newly Acquired Or Constructed Property | | |
|     Buildings | $250,000 | 25% Buildings Limit/<br>$500,000 each Building |
|     Business Personal Property | $100,000 | $250,000 |
| Outdoor Property / any one tree, shrub or plant | $2,500 / $1,000 | $10,000 / $1,000 |
| Outdoor Signs | $1,000 attached to buildings only | $5,000 all outdoor signs |
| Personal Effects | $2,500 | $5,000 |
| Premises Boundary Increased | 100 feet | 1,000 feet |
| Valuable Papers And Records | $10,000 at premises<br>$5,000 not at premises | $25,000 at premises<br>$25,000 not at premises |

#### Section II – Liability

| Coverage | BP 00 03 Limit | Revised Limit |
|---|---|---|
| Supplementary Payments - Cost Of Bail Bonds | $250 | $1,000 |
| Supplementary Payments - Loss Of Earnings | $250 | $500/day |

---

**BP 99 TX 09 16**   Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.

EXHIBIT A

Copy from re:SearchTX

**TX POLICY CUSTOMIZATIONS**

Any reference in **Section I — Property** of the Business-owner's Coverage Form to within 100 feet of the described premises is amended to read within 1,000 feet of the described premises.

**Section I – Property, A.1., Covered Property** is amended as follows:

1. The following is added to Paragraph **a.**

   **(7)** Building Glass, meaning glass that is part of a building or structure.

**Section I – Property, A.4., Limitations** is amended as follows:

1. Paragraph **b.(2)** is deleted.

2. Paragraph **c.** is deleted and replaced with the following:

   **c.** For loss or damage by theft, the following types of property are covered only up to the limits shown:

   **(1)** $2,500 for furs, fur garments and garments trimmed with fur.

   **(2)** $5,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $500 or less per item.

   **(3)** $2,500 for patterns, dies, molds and forms.

3. Paragraph **d.** is added:

   **d.** For loss or damage by any covered cause of loss, we will only pay up to $2,500 per occurrence for awnings.

**Section I – Property, A.5., Additional Coverages** is amended as follows:

1. Paragraph **c. Fire Department Service Charge** is replaced with the following:

   When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $25,000, unless a different limit is shown in the Declarations, for your liability for fire department service charges:

   **(1)** Assumed by contract or agreement prior to loss; or

   **(2)** Required by local ordinance.

2. Paragraph **k. - Forgery Or Alteration -** Paragraph **(4)** is replaced with the following:

   **(4)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $10,000, unless a higher Limit of Insurance is shown in the Declarations.

**Section I – Property, A.6., Coverage Extensions** is amended as follows:

1. The last paragraph in Paragraph **a. – Newly Acquired Or Constructed Property** under **(1) Buildings** is replaced with the following:

   The most we will pay in any one occurrence for loss or damage under this Extension is 25% of the Limit of Insurance for Buildings shown in the Declarations, but not more than $500,000 at each building.

2. The last paragraph in Paragraph **a. – Newly Acquired Or Constructed Property** under **(2) Business Personal Property** is replaced with the following:

   The most we will pay for loss or damage under this Extension is $250,000 at each building.

3. The last sentence in Paragraph **b. – Personal Property Off-premises** is amended as follows:

   The most we will pay for loss or damage under this Extension is $10,000, unless a higher Limit of Insurance for Personal Property Off-premises is shown in the Declarations.

4. Paragraph **c. - Outdoor Property** is replaced with the following:

   **c. Outdoor Property**
   You may extend the insurance provided by this policy to apply to your outdoor:
   **(1)** Fences, signs (other than signs attached to buildings), trees, shrubs and plants, including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:
   **(a)** Fire;
   **(b)** Lightning;
   **(c)** Explosion;
   **(d)** Riot or Civil Commotion; or
   **(e)** Aircraft.
   **(2)** Radio and television antennas (including satellite dishes), including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:
   **(a)** Fire;
   **(b)** Lightning;
   **(c)** Windstorm;
   **(d)** Ice, Snow, Sleet or Hail;
   **(e)** Explosion;

EXHIBIT A

Copy from re:SearchTX

**(f)** Riot or Civil Commotion; and
**(g)** Aircraft.

The most we will pay for loss or damage under this Extension is $10,000, unless a higher Limit of Insurance for Outdoor Property is shown in the Declarations, but not more than $1,000 for any one tree, shrub or plant.

**5.** Paragraph **d. – Personal Effects** is replaced with the following:

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees. This extension does not apply to:
**(1)** Tools or equipment; or
**(2)** Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $5,000 at each described premises.

**6.** Paragraph **e. – Valuable Papers And Records** Paragraph **(3)** is replaced with the following:

**(3)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $25,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is $25,000.

**7.** Paragraph **f. – Accounts Receivable** Paragraph **(2)** is replaced with the following:

**(2)** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $25,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $25,000.

**8.** Paragraph **f. – Accounts Receivable** Paragraph **(3)** is replaced with the following:

**(3)** Paragraph **B. Exclusions** in **Section I – Property** does not apply to this Coverage Extension except for:
**(a)** Paragraph **B.1.c. Governmental Action**;

**(b)** Paragraph **B.1.d. Nuclear Hazard**;
**(c)** Paragraph **B.1.f. War And Military Action**;
**(d)** Paragraph **B.2.f. Dishonesty**;
**(e)** Paragraph **B.2.g. False Pretense**;
**(f)** Paragraph **B.2.o. Electrical Disturbance**
**(g)** Paragraph **B.3.**; and
**(h)** Paragraph **B.6. Accounts Receivable Exclusion.**

**9.** Paragraph **g. – Appurtenant Structures** is added:

**g. Appurtenant Structures**

**(1)** When there is a Building Limit of Insurance shown in the Declarations at the described premises, you may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage caused by or resulting from a Covered Cause of Loss to incidental appurtenant structures within 1,000 feet of the described premises.

**(2)** When there is a Business Personal Property Limit of Insurance shown in the Declarations at the described premises, you may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage caused by or resulting from a Covered Cause of Loss to Business Personal Property within incidental appurtenant structures within 1,000 feet of the described premises.

**(3)** Incidental appurtenant structures include storage buildings, carports, garages and similar structures which have not been specifically described in the Declarations.

The most we will pay for loss or damage under this Coverage Extension in any one occurrence for any combination of loss or damage to Building and Business Personal Property is $50,000.

**Section I – Property, B. Exclusions 2.** is amended as follows:

**1.** Paragraph **q. Asbestos** is added:

**q. Asbestos**
Any loss, damage or expense which would not have occurred in whole or in part but for the presence of asbestos.

EXHIBIT A

Copy from re:SearchTX

**TX POLICY CUSTOMIZATIONS**

**Section I – Property, G. Optional Coverages** is amended as follows:

1. Paragraph **1. – Outdoor Signs** Paragraph **d.** is replaced with the following:

   The most we will pay for loss or damage in any one occurrence is $5,000, unless a higher Limit of Insurance for Outdoor Signs is shown in the Declarations.

2. Paragraph **3. – Employee Dishonesty** Paragraph **c.** is replaced with the following:

   The most we will pay for loss or damage in any one occurrence is $10,000, unless a higher Limit of Insurance for Employee Dishonesty is shown in the Declarations.

**Section II – Liability, A. Coverages** is amended as follows:

1. Under **Business Liability** Paragraph **f., Coverage Extension – Supplementary Payments,** Paragraph **(1)**, sections **(b)**, **(c)** and **(d)** are replaced with the following:

   **(b)** Up to $1,000 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.
   **(c)** The cost of appeal bonds or bonds to release attachments, but only for bond amounts within our Limit of Insurance.  We do not have to furnish these bonds.
   **(d)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

**Section II – Liability, B. Exclusions** is amended as follows:

1. Under **1., Applicable To Business Liability Coverage,** Paragraph **a., Expected Or Intended Injury** is deleted and replaced with the following:

   **a. Expected Or Intended Injury**
   "Bodily injury" or "property damage" (including any unexpected or unintended portion thereof) if any "bodily injury" or "property damage" was expected or intended from the standpoint of any insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

2. Under **1., Applicable To Business Liability Coverage,** Paragraph **j., Professional Services (8)** and **(9)** are amended and **(10)** is added as follows:

   **(8)** Any body piercing services (not including ear lobe piercing), tattooing and similar services;
   **(9)** Services in the practice of pharmacy; and
   **(10)** Computer or software design, advice or consultation, programming services including virus protection, firewall or web site design.

3. Under **1., Applicable To Business Liability Coverage,** Paragraph **k., Damage To Property,** the following is added to the last paragraph:

   Paragraphs **(3)** and **(4)** of this exclusion do not apply to "property damage" to borrowed equipment while not being used to perform operations at a job site.

4. Under **1., Applicable To Business Liability Coverage,** Paragraph **m., Damage To Your Work**, the following is deleted:

   This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

5. Under **1., Applicable To Business Liability Coverage,** Paragraph **p. Personal And Advertising Injury,** Paragraph **(1)** is deleted and replaced with the following:

   **(1)** Caused by or at the direction of or with the consent or acquiescence of any insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

6. Under **1., Applicable To Business Liability Coverage,** Paragraph **p., Personal and Advertising Injury**, the following is added:

   **(14)** Arising out of:
     **(a)** Your placement of advertising for others on your web site or a link to or a reference to a web site or web address of others on your web site.
     **(b)** Your placement of content or company brand or product information from others on your web site or on any frame or border within your web site.
     **(c)** Software or programming related to your web site's design, appearance or functions.

EXHIBIT A

Copy from re:SearchTX

**TX POLICY CUSTOMIZATIONS**

**(15)** Arising out of discrimination, harassment or humiliation by an officer, director, member or partner of the insured.

**(16)** Arising out of representations made by you or your agents regarding the value or suitability of any securities, or the fluctuation in value or price of any stocks, bonds or other securities.

**(17)** Violation of antitrust laws, state and federal laws governing restrictions on trade, unfair competition or deceptive advertising.

**7.** Under **1., Applicable To Business Liability Coverage,** Paragraph **r. Criminal Acts** is deleted and replaced with the following:

**r.   Criminal Acts**
"Bodily injury", "property damage", or "personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**8.** Under **1., Applicable To Business Liability Coverage,** Paragraphs **t., u. and v.** are added as follows:

**t.   Asbestos**
**(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.
**(2)** Any damages, judgments, settlements, loss, costs or expenses that:
   **(a)** May be awarded or incurred by reason of any claim or "suit" alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the presence of asbestos;
   **(b)** Arise out of any request, demand, order to statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an asbestos presence; or
   **(c)** Arise out of any claim or suit for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any

way responding to or assessing the effect of an asbestos presence.

**u.   Nuclear Hazard**
Nuclear reaction or radiation, or radioactive contamination, however caused. But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**v.   Fungi Or Bacteria**
**(1)** "Bodily Injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.
**(2)** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**Section II – Liability, D, Liability And Medical Expenses Limits Of Insurance** is amended as follows:

**1.** Paragraph **2.** is replaced with the following:

**2.** The most we will pay for the sum of all damages because of all:
   **a.** "Bodily injury", "property damage" and medical expenses, arising out of any one "occurrence" including "Bodily injury" and "property damage" under the "products-completed operations hazard"; and
   **b.** "Personal and advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses – Each Occurrence limit shown in the Decla-

EXHIBIT A

Copy from re:SearchTX

**TX POLICY CUSTOMIZATIONS**

rations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

**2.** Paragraph **4.** is replaced with the following:

**4. Aggregate Limits**
Regardless of the number of occurrences and subject to the Liability and Medical Expenses-Each Occurrence limit, the most we will pay for:

**a.** All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses-Each Occurrence limit.  This limit is shown in the declarations as "Products and Completed Operations Aggregate".

**b.** All:

   **(1)** "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

   **(2)** Plus medical expenses;

   **(3)** Plus all "personal and advertising injury" caused by offenses committed;

is twice the Liability and Medical Expenses-Each Occurrence limit shown in the Declarations.  This limit is shown in the declarations as "General Aggregate (other than Products and Completed Operations Aggregate)".

Subject to Paragraph a. or b. above, whichever applies, the Damage To Premises Rented To You Limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance of Section II – Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**Section II – Liability, E. Liability And Medical Expense General Conditions** is amended as follows:

**1.** Under **2., Duties In The Event Of Occurrence, Offense, Claim Or Suit,** Paragraphs **e.** and **f.** are added as follows:

   **e.** If we cover a claim or "suit" under this coverage that may also be covered by other insurance available to an additional insured, such insurance if any, shall be primary, and such additional insured must submit such claim or suit to the other insurer for defense and indemnity.

   **f.** Paragraphs **a.** and **b.** apply to you or to any additional insured only when such "occurrence," offense, claim or suit is known to you or any additional insured or your or any additional insured's partner, limited liability company manager, executive officer, trustee or political official if you or any additional insured is a political subdivision or agency. This Paragraph **f.** applies separately to you and any additional insured.

**2.** Paragraph **5. Representations** is added as follows:

   **5. Representations**
   When You Accept This Policy
   By accepting this policy, you agree:
   **a.** The statements in the Declaration are accurate and complete;
   **b.** Those statements are based upon representations you made to us; and
   **c.** We have issued this policy in reliance upon your representations.

**Section II – Liability, F. Liability And Medical Expense Definitions** is amended as below:

**1.** Paragraph **23.** is added as below:

   **23.** "Fungi" means any type or form of fungus including mold or mildew and any mycotoxins, spores, scents, or by-products produced or released by fungi.

---

EXHIBIT A

Copy from re:SearchTX

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A. Section I – Property** is amended as follows:

  **1.** Paragraph **B. Exclusions** is amended as follows:

    **a.** Paragraph **2.l.(4)** is replaced by the following:

      **(4)** Settling, cracking, shrinking, expansion or contraction;

    **b.** The following is added to Paragraph **2.l. Other Types Of Loss:**

      **(8)** Release, discharge or dispersal of contaminants or pollutants.

  **2.** Paragraph **E.2. Appraisal** Property Loss Condition is replaced by the following:

    **2. Appraisal**

    **a.** If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss. Each party will:

      **(1)** Pay its chosen appraiser; and

      **(2)** Bear the other expenses of the appraisal and umpire equally.

    **b.** If there is an appraisal:

      **(1)** You will retain your right to bring a legal action against us, subject to the provisions of Paragraph **E.4.** Legal Action Against Us Property Loss Condition; and

      **(2)** We will still retain our right to deny the claim.

  **3.** Paragraph **E.3. Duties In The Event Of Loss Or Damage** Property Loss Condition is amended as follows:

    **a.** Paragraph **a.(2)** is replaced by the following:

      **(2)** Give us prompt notice of the loss or damage. Include a description of the property involved. However, with respect to loss or damage in the state of Texas caused by windstorm or hail in the catastrophe area as defined by the Texas Insurance Code, any claim must be filed with us not later than one year after the date of the loss or damage that is the subject of the claim, except that a claim may be filed after the first anniversary of the date of the loss or damage for good cause shown by the person filing the claim.

    **b.** Paragraph **a.(7)** is replaced by the following:

      **(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 91 days after our request. We will supply you with the necessary forms.

  **4.** Paragraph **E.4. Legal Action Against Us** Property Loss Condition is replaced by the following, except as provided in **7.** below:

    **4. Legal Action Against Us**

    **a.** Except as provided in Paragraph **b.,** no one may bring a legal action against us under this insurance unless:

      **(1)** There has been full compliance with all of the terms of this insurance; and

      **(2)** The action is brought within two years and one day from the date the cause of action first accrues. A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action.

© Insurance Services Office, Inc., 2013

Copy from re:SearchTX

**b.** With respect to loss or damage in the state of Texas caused by windstorm or hail in the catastrophe area as defined by the Texas Insurance Code, no one may bring a legal action against us under this insurance, unless:

**(1)** There has been full compliance with all of the terms of this insurance; and

**(2)** The action is brought within the earlier of the following:

**(a)** Two years and one day from the date we accept or reject the claim; or

**(b)** Three years and one day from the date of the loss or damage that is the subject of the claim.

This Paragraph **4.** does not apply to Paragraph **E.4. Legal Action Against Us** Liability And Medical Expenses General Condition in **Section II – Liability.**

**5.** Paragraph **E.5. Loss Payment** Property Loss Condition is amended as follows:

**a.** Paragraph **5.d.(1)(b)** is replaced by the following:

**(b)** If, at the time of the loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

**(i)** The actual cash value of the lost or damaged property; or

**(ii)** A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the full replacement cost of the property immediately before the loss.

**b.** The following is added:

**Section 862.053. Policy A Liquidated Demand**

A fire insurance policy, in case of total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this Article shall not apply to personal property.

**c.** Under Paragraph **E.5. Loss Payment,** the provisions pertaining to notice of our intentions and the time period for payment of claims are replaced by the following:

**(1) Claims Handling**

**(a)** Within 15 days after we receive written notice of claim, we will:

**(i)** Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgment;

**(ii)** Begin any investigation of the claim; and

**(iii)** Request a signed, sworn proof of loss, specify the information you must provide and supply you with the necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

**(b)** We will notify you in writing as to whether:

**(i)** The claim or part of the claim will be paid;

**(ii)** The claim or part of the claim has been denied, and inform you of the reasons for denial;

**(iii)** More information is necessary; or

**(iv)** We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

We will provide notification, as described in **(b)(i)** through **(b)(iv)** above within:

**(i)** 15 business days after we receive the signed, sworn proof of loss and all information we requested; or

**(ii)** 30 days after we receive the signed, sworn proof of loss and all information we requested, if we have reason to believe the loss resulted from arson.

If we notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

© Insurance Services Office, Inc., 2013   BP 01 18 11 13

EXHIBIT A

Copy from re:SearchTX

**(2)** We will pay for covered loss or damage within five business days after:

  **(a)** We have notified you that payment of the claim or part of the claim will be made and have reached agreement with you on the amount of loss; or

  **(b)** An appraisal award has been made.

  However, if payment of the claim or part of the claim is conditioned on your compliance with any terms of this policy, we will make payment within five business days after the date you have complied with such terms.

**(3) Catastrophe Claims**

  If a claim results from a weather-related catastrophe or a major natural disaster, the claim handling and claim payment deadlines described in **c.(1)** and **c.(2)** above are extended for an additional 15 days.

  Catastrophe or Major Natural Disaster means a weather-related event which:

  **(a)** Is declared a disaster under the Texas Disaster Act of 1975; or

  **(b)** Is determined to be a catastrophe by the State Board of Insurance.

**(4)** The term "business day", as used in the Loss Payment Property Loss Condition, means a day other than Saturday, Sunday or a holiday recognized by the state of Texas.

**6.** The following is added to Paragraph **F. Property General Conditions:**

  **5. Loss To Real Property**

  The amount of insurance applicable to loss to real property by fire will be reduced by the amount of such loss. As repairs are made, the amount reduced will be reinstated to the extent of the value of the repairs. The reinstatement will not increase the specified Limits of Insurance.

  No other loss insured against in Section **I –** Property will reduce the specified Limits of Insurance.

**7.** Paragraphs **F.2.d.** and **F.2.f.** of the **Mortgageholders** Property General Condition are replaced by the following:

  **d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

  **(1)** Pays any premium due under this policy at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 91 days after receiving notice from us of your failure to do so; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

  All of the terms of this policy will then apply directly to the mortgageholder.

  **f.** If this policy is cancelled, we will give the mortgageholder named in the Declarations written notice of cancellation.

  If we cancel this policy, we will notify the mortgageholder at least:

  **(1)** 14 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

  If you cancel the policy, we will give the mortgageholder notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail the notice.

**8.** Paragraph **H. Property Definitions** is amended as follows:

  Paragraph **9.b.** is replaced by the following:

  **b.** "Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that regulates the construction, use or repair, or requires the tearing down of any property.

  The expiration date of this policy will not cut short the "period of restoration".

EXHIBIT A

Copy from re:SearchTX

**B. Section II – Liability** is amended as follows:

1. The following is added to Paragraph **E.2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** Liability And Medical Expenses General Condition and similar conditions in any endorsement attached to this policy:

   We will notify the first Named Insured in writing of:

   a. An initial offer to settle a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

   b. Any settlement of a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

2. The following provision applies:

   With regard to liability for "bodily injury", "property damage" and "personal and advertising injury", unless we are prejudiced by the insured's or your failure to comply with the requirement, no provision of this policy requiring you or any insured to give notice of "occurrence", claim or "suit" or to forward demands, notices, summonses or legal papers in connection with a claim or "suit" will bar coverage under this policy.

**C. Section III – Common Policy Conditions** is amended as follows:

1. Paragraph **A.2. Cancellation** is replaced by the following:

   2. We may cancel this policy:

      a. By mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

      b. For the following reasons, if this policy does not provide coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001 or on one- and two-family dwellings:

         (1) If this policy has been in effect for 60 days or less, we may cancel for any reason except that, under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official; or

         (2) If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

            (a) Fraud in obtaining coverage;

            (b) Failure to pay premiums when due;

            (c) An increase in hazard within the control of the insured which would produce an increase in rate;

            (d) Loss of our reinsurance covering all or part of the risk covered by the policy; or

            (e) If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

      c. For the following reasons, if this policy provides coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001 or on one- and two-family dwellings:

         (1) If this policy has been in effect for less than 90 days, we may cancel this policy for any reason.

         (2) If this policy has been in effect for 90 days or more, or if it is a renewal or continuation of a policy issued by us, we may cancel this policy only for the following reasons:

            (a) If the first Named Insured does not pay the premium or any portion of the premium when due;

            (b) If the Texas Department of Insurance determines that continuation of this policy would result in violation of the Texas Insurance Code or any other law governing the business of insurance in Texas;

            (c) If the Named Insured submits a fraudulent claim; or

            (d) If there is an increase in the hazard within the control of the Named Insured which would produce an increase in rate.

© Insurance Services Office, Inc., 2013

Copy from re:SearchTX

**2.** The following paragraph is added and supersedes any provision to the contrary:

**M.  Nonrenewal**

**1.** We may elect not to renew this policy except that, under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

**2.** If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

**3.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**4.** The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

**3.** Paragraph **I.3. Premiums** does not apply.

Copy from re:SearchTX

POLICY NUMBER:                                                    **BUSINESSOWNERS**
                                                             **BP 02 04 01 06**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – AMENDMENT OF CANCELLATION PROVISIONS OR COVERAGE CHANGE

This endorsement modifies insurance provided under the following:

    BUSINESSOWNERS COVERAGE FORM

In the event of cancellation or material change that reduces or restricts the insurance afforded by this Policy, we agree to mail prior written notice of cancellation or material change to:

**SCHEDULE**

| | |
|---|---|
| **A.  Name:** Top Class Hospitality LLC | |
| **B.  Address:** 1436 N Business Ih 35, New Braunfels, TX 78130-3241 | |
| **C.  Number Of Days Advance Notice:** 10 days' notice for cancellations; 30 days' notice for reduction or restriction in coverage on renewal | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

EXHIBIT A

Copy from re:SearchTX

**TEXAS**
**POLICYHOLDER**
**NOTICE**

# IMPORTANT NOTICE

To obtain information or make a complaint:

You may contact your agent, FD&S INSURANCE AGENCY, INC. at 903-581-4939.

You may also call our toll-free telephone number at:

## 800-673-2465

You may write to:

> Berkshire Hathaway GUARD Insurance Companies
> Attn:  Customer Service
> P.O. Box A-H
> Wilkes-Barre. PA 18703-0020

You may also contact the Texas Department of Insurance to obtain information on companies, coverages, rights, or complaints at:

## 1-800-252-3439.

You may write to the Texas Department of Insurance at:

**P.O. Box 149104**
**Austin, TX 78714-9104**

or correspond via fax at **512-490-1007** or e-mail to **ConsumerProtection@tdi.texas.gov** or visit the Department's web site at **www.tdi.texas.gov.**

## PREMIUM OR CLAIM DISPUTES:

If you have a dispute about your premium or your claims, you should contact your agent and company.  If the dispute is not resolved, you may contact the Texas Department of Insurance.

## <u>ATTACH THIS NOTICE TO YOUR POLICY</u>

This notice is for informational purposes only and does not become a part or condition of the attached document.

---

EXHIBIT A

Copy from re:SearchTX

# Notice to Policyholders regarding Asbestos Exclusion

This Notice has been prepared to inform you that your policy includes an **Asbestos Exclusion (BP 99 TX – Policy Customizations)**. The purpose of this Notice is to clarify the intent of coverage provided by your policy. Specifically, this insurance contains the following exclusions –

**Section I – Property, B. Exclusions 2.** is amended as follows:

1. Paragraph **q. Asbestos** is added:

   **q. Asbestos**
   Any loss, damage or expense which would not have occurred in whole or in part but for the presence of asbestos.

**Section II – Liability, B. Exclusions** is amended as follows:

1. Under **1., Applicable To Business Liability Coverage,** Paragraph **t.** is added as follows:

   **t. Asbestos**
   **(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.
   **(2)** Any damages, judgments, settlements, loss, costs or expenses that:
   **(a)** May be awarded or incurred by reason of any claim or "suit" alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the presence of asbestos;
   **(b)** Arise out of any request, demand, order to statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an asbestos presence; or
   **(c)** Arise out of any claim or suit for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effect of an asbestos presence.

**This summary is provided for informational purposes only and its contents are not intended to amend, alter or change any of the terms or conditions of the policy. It is not a substitute for reviewing the actual forms and endorsements contained in your policy. Please read your policy to better understand the terms and conditions of your coverage.**

If you have any questions or need additional information, please contact your agent.

EXHIBIT A

Copy from re:SearchTX

POLICY NUMBER: TOBP845751

**BUSINESSOWNERS**
**BP 04 04 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Coverage | Additional Premium |
|---|---|
| **A.  Hired Auto Liability** | $52.00 |
| **B.  Non-owned Auto Liability** | $91.00 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** Insurance is provided only for those coverages for which a specific premium charge is shown in the Declarations or in the Schedule.

  **1. Hired Auto Liability**

  The insurance provided under Paragraph **A.1. Business Liability** in **Section II – Liability** applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

  **2. Non-owned Auto Liability**

  The insurance provided under Paragraph **A.1. Business Liability** in **Section II – Liability** applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person.

**B.** For insurance provided by this endorsement only:

  **1.** The exclusions under Paragraph **B.1. Applicable To Business Liability Coverage** in **Section II – Liability,** other than Exclusions **a., b., d., f.** and **i.** and the **Nuclear Energy Liability Exclusion,** are deleted and replaced by the following:

  **a.** "Bodily injury" to:

    **(1)** An "employee" of the insured arising out of and in the course of:

      **(a)** Employment by the insured; or

      **(b)** Performing duties related to the conduct of the insured's business; or

    **(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

    This exclusion applies:

    **(1)** Whether the insured may be liable as an employer or in any other capacity; and

    **(2)** To any obligation to share damages with or repay someone else who must pay damages because of injury.

    This exclusion does not apply to:

    **(1)** Liability assumed by the insured under an "insured contract"; or

    **(2)** "Bodily injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers' compensation law.

  **b.** "Property damage" to:

    **(1)** Property owned or being transported by, or rented or loaned to the insured; or

    **(2)** Property in the care, custody or control of the insured.

© Insurance Services Office, Inc., 2009

Copy from re:SearchTX

2. Paragraph **C. Who Is An Insured** in **Section II – Liability** is replaced by the following:

1. Each of the following is an insured under this endorsement to the extent set forth below:

   a. You;

   b. Any other person using a "hired auto" with your permission;

   c. For a "non-owned auto":

      (1) Any partner or "executive officer" of yours; or

      (2) Any "employee" of yours;

      but only while such "non-owned auto" is being used in your business; and

   d. Any other person or organization, but only for their liability because of acts or omissions of an insured under **a., b.** or **c.** above.

2. None of the following is an insured:

   a. Any person engaged in the business of his or her employer for "bodily injury" to any co-"employee" of such person injured in the course of employment, or to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of such "bodily injury", or for any obligation to share damages with or repay someone else who must pay damages because of the injury;

   b. Any partner or "executive officer" for any "auto" owned by such partner or officer or a member of his or her household;

   c. Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

   d. The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or "employee" of any such owner or lessee; or

   e. Any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**C.** For the purposes of this endorsement only, Paragraph **H. Other Insurance** in **Section III – Common Policy Conditions** is replaced by the following:

This insurance is excess over any primary insurance covering the "hired auto" or "non-owned auto".

**D.** The following additional definitions apply:

1. "Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

2. "Hired auto" means any "auto" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", your partners or your "executive officers" or members of their households.

3. "Non-owned auto" means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. This includes "autos" owned by your "employees", your partners or your "executive officers", or members of their households, but only while used in your business or your personal affairs.

Copy from re:SearchTX

POLICY NUMBER: TOBP845751

**BUSINESSOWNERS**
**BP 04 12 01 06**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| |
|---|
| **A.  Premises:** |
| as per the location schedule on this policy |
| **B.  Project:** |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to **Section II – Liability:**

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

**1.** The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

**2.** The project shown in the Schedule.

EXHIBIT A

Copy from re:SearchTX

BUSINESSOWNERS
BP 04 17 01 10

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following exclusion is added to Paragraph **B.1. Exclusions – Applicable To Business Liability Coverage** in **Section II – Liability:**

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraph **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraph **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

© Insurance Services Office, Inc., 2009   □

EXHIBIT A

Copy from re:SearchTX

POLICY NUMBER: TOBP845751

**BUSINESSOWNERS**
**BP 04 30 01 06**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Prem. No. | Bldg. No. | Protective Safeguards Symbols Applicable | Description Of "P-9" If Applicable: |
|---|---|---|---|
| 001 | 001 | P-1, P-2 | Central Station Burglar Alarm |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | |

**A.** The following is added to the **Property General Conditions** in **Section I – Property:**

**PROTECTIVE SAFEGUARDS**

**1.** As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.

**2.** The protective safeguards to which this endorsement applies are identified by the following symbols:

**a.** **"P-1" Automatic Sprinkler System,** including related supervisory services.

Automatic Sprinkler System means:

**(1)** Any automatic fire protective or extinguishing system, including connected:

**(a)** Sprinklers and discharge nozzles;

**(b)** Ducts, pipes, valves and fittings;

**(c)** Tanks, their component parts and supports; and

**(d)** Pumps and private fire protection mains.

**(2)** When supplied from an automatic fire protective system:

**(a)** Non-automatic fire protective systems; and

**(b)** Hydrants, standpipes and outlets.

**b.** **"P-2" Automatic Fire Alarm,** protecting the entire building, that is:

**(1)** Connected to a central station; or

**(2)** Reporting to a public or private fire alarm station.

**c.** **"P-3" Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**d.** **"P-4" Service Contract,** with a privately owned fire department providing fire protection service to the described premises.

**e.** **"P-9",** the protective system described in the Schedule.

**B.** The following is added to Paragraph **B. Exclusions** in **Section I – Property:**

We will not pay for loss or damages caused by or resulting from fire if, prior to the fire, you:

**1.** Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

**2.** Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

EXHIBIT A
Copy from re:SearchTX

**BUSINESSOWNERS**
**BP 05 01 07 02**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

EXHIBIT A

Copy from re:SearchTX

POLICY NUMBER:

**BUSINESSOWNERS**
**BP 05 15 01 15**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO
# TERRORISM RISK INSURANCE ACT

### SCHEDULE

| SCHEDULE – PART I |
|---|
| **Terrorism Premium (Certified Acts)**   $139.00 |
| **Additional information, if any, concerning the terrorism premium:** |

| SCHEDULE – PART II |
|---|
| **Federal share of terrorism losses**   83 **%**   **Year:** 2017<br>(Refer to Paragraph **B.** in this endorsement.) |
| **Federal share of terrorism losses**   82 **%**   **Year:** 2018<br>(Refer to Paragraph **B.** in this endorsement.) |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

EXHIBIT A

Copy from re:SearchTX

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

EXHIBIT A

Copy from re:SearchTX

BUSINESSOWNERS
BP 05 23 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED
# ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Policy and apply to Property and Liability Coverages:

**A. CAP ON CERTIFIED TERRORISM LOSSES**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

© Insurance Services Office, Inc., 2015

EXHIBIT A

Copy from re:SearchTX

BUSINESSOWNERS
BP 05 38 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Liability Coverage Form **BP 00 06** and **Section II – Liability** of the Businessowners Coverage Form **BP 00 03**:

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in U.S. dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**a.** Physical injury that involves a substantial risk of death; or

**b.** Protracted and obvious physical disfigurement; or

**c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Form to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage" or "personal and advertising injury" as may be defined in any applicable Coverage Form.

BP 05 38 01 15                    © Insurance Services Office, Inc., 2015                    Page 1 of 2

EXHIBIT A

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

**b.** The act resulted in damage:

**(1)** Within the United States (including its territories and possessions and Puerto Rico); or

**(2)** Outside of the United States in the case of:

**(a)** An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

**(b)** The premises of any United States mission; and

**c.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**3.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.

**D.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Copy from re:SearchTX

BUSINESSOWNERS
BP 05 42 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Liability Coverage Form **BP 00 06** and **Section II – Liability** of the Businessowners Coverage Form **BP 00 03**:

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.

© Insurance Services Office, Inc., 2015

EXHIBIT A

Copy from re:SearchTX

POLICY NUMBER: TOBP845751

**BUSINESSOWNERS**
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Premises Number: | 001 | Building Number: | 001 | Applicable Clause (Indicate Paragraph A, B or C): | A |
|---|---|---|---|---|---|
| **Description Of Property:** | | | | | |
| **Loss Payee Name:** | Jefferson State Bank | | | | |
| **Loss Payee Address:** | 14614 Blanco Rd. Dallas, TX, 75216 | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I – Property,** as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I – Property** will then apply directly to the Loss Payee.

© Insurance Services Office, Inc., 2009        EXHIBIT A

Copy from re:SearchTX

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III – Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

© Insurance Services Office, Inc., 2009
EXHIBIT A

Copy from re:SearchTX

POLICY NUMBER: TOBP845751

**BUSINESSOWNERS**
**BP 14 05 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – GRANTOR OF FRANCHISE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Name Of Person(s) Or Organization(s): |
|---|
| InterContinental Hotels Group |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following is added to Paragraph **C. Who Is An Insured** in **Section II – Liability:**

Any person(s) or organization(s) shown in the Schedule is also an insured, but only with respect to their liability as a grantor of a franchise to you.

EXHIBIT A

Copy from re:SearchTX

**BUSINESSOWNER'S**
**BP 99 04 01 10**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EQUIPMENT BREAKDOWN COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNER'S COVERAGE FORM

**A.** The following is added to **Paragraph A.3. <u>Covered Causes of Loss</u>** in **SECTION I – PROPERTY**:

**Additional Coverage-- Equipment Breakdown**
The term Covered Cause of Loss includes the Additional Coverage Equipment Breakdown as described and limited below.

1. We will pay for direct physical damage to Covered Property that is the direct result of an "accident." As used in this Additional Coverage, "accident" means a fortuitous event that causes direct physical damage to "covered equipment." The event must be one of the following:

   **a.** mechanical breakdown, including rupture or bursting caused by centrifugal force;

   **b.** artificially generated electrical, magnetic or electromagnetic energy, including electric arcing, that damages, disturbs, disrupts or otherwise interferes with any electrical or electronic wire, device, appliance, system or network;

   **c.** explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

   **d.** loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

   **e.** loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

2. Unless otherwise shown in a Schedule, the following coverages also apply to the direct result of an "accident." These coverages do not provide additional amounts of insurance.

   **a. Expediting Expenses**
   With respect to your damaged Covered Property, we will pay the reasonable extra cost to:
   **(1)** make temporary repairs; and
   **(2)** expedite permanent repairs or permanent replacement.
   The most we will pay for loss or expense under this coverage is $25,000 unless otherwise shown in a Schedule.

   **b. Hazardous Substances**
   We will pay for the additional cost to repair or replace Covered Property because of contamination by a "hazardous substance." This includes the additional expenses to clean up or dispose of such property.

   This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in **2.c.(1)(b)** below. As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.

---

Copy from re:SearchTX

EXHIBIT A

**BUSINESSOWNER'S – Equipment Breakdown Coverage Endorsement**

The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, is $25,000 unless otherwise shown in a Schedule.

**c.  Spoilage**
   **(1)** We will pay:
   **(a)** for physical damage to "perishable goods" due to spoilage;
   **(b)** for physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia;
   **(c)** any necessary expenses you incur to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.
   **(2)** If you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident," less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with the Loss Payment condition.

The most we will pay for loss, damage or expense under this coverage is $25,000 unless otherwise shown in a Schedule.

**d.  Data Restoration**
   We will pay for your reasonable and necessary cost to research, replace and restore lost "electronic data."

The most we will pay for loss or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, is $25,000 unless otherwise shown in a Schedule.

**e.  Service Interruption**
   **(1)** Any insurance provided for Business Income, Extra Expense or Spoilage is extended to apply to your loss, damage or expense caused by the interruption of utility services. The interruption must result from an "accident" to equipment, including overhead transmission lines, that is owned by a utility, landlord, a landlord's utility or other supplier who provides you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks or data transmission. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

   **(2)** Unless otherwise shown in a Schedule, coverage for any loss of Business Income you sustain that results from the interruption of utility services will not apply unless the failure or disruption of service exceeds 24 hours immediately following the "accident." If the interruption exceeds 24 hours, coverage will begin at the time of the interruption and the deductible applicable to Business Income will apply.

   **(3)** The most we will pay in any "one accident" for loss, damage or expense under this coverage is the applicable limit for Business Income, Extra Expense or Spoilage, except that if a limit is shown in a Schedule for Service Interruption, that limit will apply to Business Income and Extra Expense loss under this coverage.

**f.  Business Income and Extra Expense**
   Any insurance provided under this policy for Business Income or Extra Expense is extended to the coverage provided by this endorsement. However, if a deductible is shown in a Schedule, then as respects Equipment Breakdown coverage, the "period of restoration" will begin immediately after the "accident," and the deductible shown in the Schedule will apply.

The most we will pay for loss or expense under this coverage is the applicable limit for Business Income and Extra Expense, unless otherwise shown in a Schedule.

**B.**  The following is added to **Paragraph B. Exclusions**:

EXHIBIT A

Copy from re:SearchTX

**Equipment Breakdown Exclusions**
All exclusions in the Businessowners Coverage Form apply except as modified below and to the extent that coverage is specifically provided by this Additional Coverage Equipment Breakdown.

1.  The following exclusions are modified:
    a.  As respects this endorsement only, the next to the last paragraph in **Exclusion B.1.h.** is deleted and replaced with the following:
        However, if excluded loss or damage, as described in **Paragraph (1)** above results in an "accident," we will pay only for the loss, damage or expense caused by such "accident."

    b.  As respects this endorsement only, the last paragraph of **Exclusion B.2.l.** is deleted and replaced with the following:
        But if an excluded cause of loss that is listed in 2.l.(1) through (7) results in an "accident," we will pay for the loss, damage or expense caused by that "accident."

    c.  The following is added to **Exclusions B.2.m.** and **B.2.n:**
        We will also pay for direct physical loss or damage caused by an "accident."

2.  The following exclusions are added:
    a.  We will not pay for loss, damage or expense caused by or resulting from:
        (1) a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment; or
        (2) any of the following:
            (a) defect, programming error, programming limitation, computer virus, malicious code, loss of data, loss of access, loss of use, loss of functionality or other condition within or involving "electronic data" of any kind; or
            (b) misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.
            However, if an "accident" results, we will pay for the resulting loss, damage or expense caused by that "accident."

    b.  With respect to Service Interruption coverage, we will also not pay for an "accident" caused by or resulting from: fire; lightning; windstorm or hail; explosion (except as specifically provided in A.1.c. above); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing; collapse; flood or earth movement.

    c.  With respect to Business Income, Extra Expense and Service Interruption coverages, we will also not pay for:
        (1) loss caused by your failure to use due diligence and dispatch and all reasonable means to resume business; or

        (2) any increase in loss resulting from an agreement between you and your customer or supplier.

**C. Deductibles**
The deductible in the Declarations applies unless a separate Equipment Breakdown deductible is shown in a Schedule.  If a separate Equipment Breakdown deductible is shown, the following applies.

Only as regards Equipment Breakdown Coverage, provision **D. Deductibles** is deleted and replaced with the following:

1.  <u>**Deductibles for Each Coverage**</u>

    a.  Unless the Schedule indicates that your deductible is combined for all coverages, multiple deductibles may apply to any "one accident."

    b.  We will not pay for loss, damage or expense under any coverage until the amount of the covered loss, damage or expense exceeds the deductible amount indicated for that coverage in the Schedule. We will then

EXHIBIT A

Copy from re:SearchTX

**BUSINESSOWNER'S – Equipment Breakdown Coverage Endorsement**

pay the amount of loss, damage or expense in excess of the applicable deductible amount, subject to the applicable limit.

    **c.** If deductibles vary by type of "covered equipment" and more than one type of "covered equipment" is involved in any "one accident," only the highest deductible for each coverage will apply.

  **2.** <u>Direct and Indirect Coverages</u>

    **a.** Direct Coverages Deductibles and Indirect Coverages Deductibles may be indicated in the Schedule.

    **b.** Unless more specifically indicated in the Schedule:
      **(1)** Indirect Coverages Deductibles apply to Business Income and Extra Expense loss; and
      **(2)** Direct Coverages Deductibles apply to all remaining loss, damage or expense covered by this endorsement.

  **3.** <u>Application of Deductibles</u>

    **a. Dollar Deductibles**
    We will not pay for loss, damage or expense resulting from any "one accident" until the amount of loss, damage or expense exceeds the applicable Deductible shown in the Schedule. We will then pay the amount of loss, damage or expense in excess of the applicable Deductible or Deductibles, up to the applicable Limit of Insurance.

    **b. Time Deductible**
    If a time deductible is shown in the Schedule, we will not be liable for any loss occurring during the specified number of hours or days immediately following the "accident." If a time deductible is expressed in days, each day shall mean twenty-four consecutive hours.

    **c. Multiple of Average Daily Value (ADV)**
    If a deductible is expressed as a number times ADV, that amount will be calculated as follows:
    The ADV (Average Daily Value) will be the Business Income (as defined in any Business Income coverage that is part of this policy) that would have been earned during the period of interruption of business had no "accident" occurred, divided by the number of working days in that period. No reduction shall be made for the Business Income not being earned, or in the number of working days, because of the "accident" or any other scheduled or unscheduled shutdowns during the period of interruption. The ADV applies to the Business Income value of the entire location, whether or not the loss affects the entire location. If more than one location is included in the valuation of the loss, the ADV will be the combined value of all affected locations. For purposes of this calculation, the period of interruption may not extend beyond the "period of restoration". The number indicated in the Schedule will be multiplied by the ADV as determined above. The result shall be used as the applicable deductible.

    **d. Percentage of Loss Deductibles**
    If a deductible is expressed as a percentage of loss, we will not be liable for the indicated percentage of the gross amount of loss, damage or expense (prior to any applicable deductible or coinsurance) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

**D. Conditions**
The following conditions are in addition to the Conditions in the Businessowners Coverage Form.

  **1.** <u>Suspension</u>
  Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "covered equipment." This can be done by mailing or delivering a written notice of suspension to:

    **a.** your last known address; or

EXHIBIT A

Copy from re:SearchTX

**BUSINESSOWNER'S – Equipment Breakdown Coverage Endorsement**

**b.** the address where the "covered equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment." If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment" for the period of suspension. But the suspension will be effective even if we have not yet made or offered a refund.

**2. Jurisdictional Inspections**
If any property that is "covered equipment" under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

**3. Environmental, Safety and Efficiency Improvements**
If "covered equipment" requires replacement due to an "accident," we will pay your additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

However, we will not pay more than 125% of what the cost would have been to replace with like kind and quality. This condition does not increase any of the applicable limits. This condition does not apply to any property to which Actual Cash Value applies.

**4. Coinsurance**
If a coinsurance percentage is shown in a Schedule for specified coverages, the following condition applies.

We will not pay for the full amount of your loss if the applicable limit is less than the product of the specified coinsurance percentage times the value of the property subject to the coverage at the time of the loss. Instead, we will determine what percentage this calculated product is compared to the applicable limit and apply that percentage to the gross amount of loss. We will then subtract the applicable deductible. The resulting amount, or the applicable limit, is the most we will pay. We will not pay for the remainder of the loss. Coinsurance applies separately to each insured location.

**E. The following definitions are added:**
**1.** "Boilers and vessels" means:

   **a.** Any boiler, including attached steam, condensate and feedwater piping; and

   **b.** Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents.

   This term does not appear elsewhere in this endorsement, but may appear in a Schedule.

**2.** "Covered equipment"

   **a.** "Covered equipment" means, unless otherwise specified in a Schedule, Covered Property:
   **(1)** that generates, transmits or utilizes energy, including electronic communications and data processing equipment; or
   **(2)** which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

   **b.** None of the following is "covered equipment":
   **(1)** structure, foundation, cabinet, compartment or air supported structure or building;
   **(2)** insulating or refractory material;
   **(3)** sewer piping, buried vessels or piping, or piping forming a part of a sprinkler or fire suppression system;
   **(4)** water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;
   **(5)** "vehicle" or any equipment mounted on a "vehicle";
   **(6)** satellite, spacecraft or any equipment mounted on a satellite or spacecraft;
   **(7)** dragline, excavation or construction equipment; or
   **(8)** equipment manufactured by you for sale.

EXHIBIT A

Copy from re:SearchTX

**BUSINESSOWNER'S – Equipment Breakdown Coverage Endorsement**

3.   "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

4.   "One accident" means: If an initial "accident" causes other "accidents," all will be considered "one accident." All "accidents" that are the result of the same event will be considered "one accident."

5.   "Perishable goods" means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

6.   "Production machinery" means any machine or apparatus that processes or produces a product intended for eventual sale. This includes all component parts of such machine or apparatus.  This term does not appear elsewhere in this endorsement, but may appear in a Schedule.

7.   "Vehicle" means, as respects this endorsement only, any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.

     However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

The most we will pay for loss, damage or expense under this endorsement arising from any "one accident" is the applicable Limit of Insurance in the Declarations unless otherwise shown in a Schedule. Coverage provided under this endorsement does not provide an additional amount of insurance.

EXHIBIT A

Copy from re:SearchTX

**BUSINESSOWNER'S**
**BP 99 109 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS - DATA COMPROMISE COVERAGE
## RESPONSE EXPENSES AND DEFENSE AND LIABILITY

This endorsement modifies insurance provided under the following:

BUSINESSOWNER'S COVERAGE FORM

| SECTION 1 – RESPONSE EXPENSES | | |
|---|---|---|
| **Data Compromise** | | |
| **Response Expenses Limit:** | $50,000 | Annual Aggregate |
| **Sublimits** | | |
| **Named Malware (Sec. 1)** | $50,000 | Any one "Personal Data Compromise" |
| **Forensic IT Review:** | $5,000 | |
| **Legal Review:** | $5,000 | |
| **PR Services:** | $5,000 | |
| **Response Expenses Deductible:** | $1,000 | Any one "Personal Data Compromise" |
| **SECTION 2 – DEFENSE AND LIABILITY** | | |
| **Data Compromise** | | |
| **Defense and Liability Limit:** | $50,000 | Annual Aggregate |
| **Sublimits** | | |
| **Named Malware (Sec. 2)** | $50,000 | Any one "Personal Data Compromise" |
| **Defense and Liability Deductible:** | $1,000 | Each "Data Compromise Suit" |

The following is added as an Additional Coverage to the Property section:

# SECTION 1 – RESPONSE EXPENSES

**DATA COMPROMISE COVERED CAUSE OF LOSS**

Coverage under this Data Compromise Coverage endorsement applies only if all of the following conditions are met:

1. There has been a "personal data compromise"; and

2. Such "personal data compromise" is first discovered by you during the policy period for which this Data Compromise Coverage endorsement is applicable; and

3. Such "personal data compromise" is reported to us within 90 days after the date it is first discovered by you.

**COVERAGE – SECTION 1**

If the three conditions listed above in DATA COMPROMISE – COVERED CAUSE OF LOSS have been met, then we will provide coverage for the following expenses when they arise directly from the covered cause of loss and are necessary and reasonable. Coverages 4 and 5 apply only if there has been a notification of the "personal data compromise" to "affected individuals" as covered under coverage 3.

1. **Forensic IT Review**

   Professional information technologies review if needed to determine, within the constraints of what is possible and reasonable, the nature and extent of the "personal data compromise" and the number and identities of the "affected individuals".

   This does not include costs to analyze, research or determine any of the following:

   a. Vulnerabilities in systems, procedures or physical security;

EXHIBIT A

Copy from re:SearchTX

b. Compliance with PCI or other industry security standards; or

c. The nature or extent of loss or damage to data that is not "personally identifying information" or "personally sensitive information".

If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under Forensic IT Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

2. **Legal Review**

Professional legal counsel review of the "personal data compromise" and how you should best respond to it.

If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under Legal Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

3. **Notification to Affected Individuals**

We will pay your necessary and reasonable costs to provide notification of the "personal data compromise" to "affected individuals".

4. **Services to Affected Individuals**

We will pay your necessary and reasonable costs to provide the following services to "affected individuals".

a. The following services apply to any "personal data compromise".

1) Informational Materials

A packet of loss prevention and customer support information.

2) Help Line

A toll-free telephone line for "affected individuals" with questions about the "personal data compromise". Where applicable, the line can also be used to request additional services as listed in b. 1) and 2).

b. The following additional services apply to "personal data compromise" events involving "personally identifying information".

1) Credit Report and Monitoring

A credit report and an electronic service automatically monitoring for activities affecting an individual's credit records. This

service is subject to the "affected individual" enrolling for this service with the designated service provider.

2) Identity Restoration Case Management

As respects any "affected individual" who is or appears to be a victim of "identity theft" that may reasonably have arisen from the "personal data compromise", the services of an identity restoration professional who will assist that "affected individual" through the process of correcting credit and other records and, within the constraints of what is possible and reasonable, restoring control over his or her personal identity.

5. **PR Services**

Professional public relations firm review of and response to the potential impact of the "personal data compromise" on your business relationships.

This includes costs to implement public relations recommendations of such firm. This may include advertising and special promotions designed to retain your relationship with "affected individuals". However, we will not pay for promotions:

a. Provided to any of your directors or employees; or

b. Costing more than $25 per "affected individual".

**LIMITS – SECTION 1**

The most we will pay under Response Expenses coverage is the Data Compromise Response Expenses Limit indicated for this endorsement.

The Data Compromise Response Expenses Limit is an annual aggregate limit. This amount is the most we will pay for the total of all loss covered under Section 1 arising out of all "personal data compromise" events which are first discovered by you during the present annual policy period. This limit applies regardless of the number of "personal data compromise" events discovered by you during that period.

A "personal data compromise" may be first discovered by you in one policy period but cause covered costs in one or more subsequent policy periods. If so, all covered costs arising from such "personal data compromise" will be subject to the Data Compromise Response Expenses Limit applicable to the policy period when the "personal data compromise" was first discovered by you.

The most we will pay under Response Expenses coverage for loss arising from any "malware-related compromise" is the Named Malware (Sec. 1) sublimit indicated for this endorsement. For the purpose of the Named Malware (Sec. 1) sublimit, all "malware-related compromises" that are caused, enabled or abetted by the same virus or other malicious code are considered to be a single "personal data compromise". This sublimit is

EXHIBIT A

Copy from re:SearchTX

**BUSINESSOWNER'S – Texas - Data Compromise Coverage Endorsement**

part of, and not in addition to the Data Compromise Response Expenses Limit.

The most we will pay under Forensic IT Review, Legal Review and PR Services coverages for loss arising from any one "personal data compromise" is the applicable sublimit for each of those coverages indicated for this endorsement. These sublimits are part of, and not in addition to, the Data Compromise Response Expenses Limit. PR Services coverage is also subject to a limit per "affected individual" as described in 5. PR Services.

Coverage for Services to "affected individuals" is limited to costs provide such services for a period of up to one year from the date of the notification to the "affected individuals". Notwithstanding, coverage for Identity Restoration Case Management services initiated within such one year period may continue for a period of up to one year from the date such Identity Restoration Case Management services are initiated.

**DEDUCTIBLE – SECTION 1**

Response Expenses coverage is subject to the Response Expenses Deductible indicated for this endorsement. You shall be responsible for such deductible amount as respects each "personal data compromise" covered under this endorsement.

# SECTION 2 – DEFENSE AND LIABILITY

### DEFENSE AND LIABILITY COVERED CAUSE OF LOSS

Coverage under this Data Compromise Coverage endorsement applies only if all three of the conditions in DATA COMPROMISE – COVERED CAUSE OF LOSS are met.

Only with regard to Section 2 – Defense and Liability coverage, the following conditions must also be met:

1. You have provided notifications and services to "affected individuals" in consultation with us pursuant to Response Expenses coverage; and

2. You receive notice of a "data compromise suit" brought by one or more "affected individuals" or by a governmental entity on behalf of one or more "affected individuals"; and

3. Notice of such "data compromise suit" is received by you within two years of the date that the "affected individuals" are notified of the "personal data compromise"; and

4. Such "data compromise suit" is reported to us as soon as practicable, but in no event more than 90 days after the date it is first received by you.

**COVERAGE – SECTION 2**

If all of the conditions listed above in DEFENSE AND LIABILITY – COVERED CAUSE OF LOSS have been met, then we will provide coverage for "data compromise defense costs" and "data compromise liability" directly arising from the covered cause of loss.

**LIMITS – SECTION 2**

The most we will pay under Defense and Liability coverage (other than post-judgment interest) is the Data Compromise Defense and Liability Limit indicated for this endorsement.

The Data Compromise Defense and Liability Limit is an annual aggregate limit. This amount is the most we will pay for all loss covered under Section 2 (other than post-judgment interest) arising out of all "personal data compromise" events which are first discovered by you during the present annual policy period. This limit applies regardless of the number of "personal data compromise" events discovered by you during that period.

A "personal data compromise" may be first discovered by you in one policy period but cause covered costs in one or more subsequent policy periods. If so, all covered costs arising from such "personal data compromise" (other than post-judgment interest) will be subject to the Data Compromise Defense and Liability Limit applicable to the policy period when the "personal data compromise" was first discovered by you.

The most we will pay under Defense and Liability coverage for loss arising from any "malware-related compromise" is the Named Malware (Sec. 2) sublimit indicated for this endorsement. For the purpose of the Named Malware (Sec. 2) sublimit, all "malware-related compromises" that are caused, enabled or abetted by the same virus or other malicious code are considered to be a single "personal data compromise". This sublimit is part of, and not in addition to, the Defense and Liability Limit.

**DEDUCTIBLE – SECTION 2**

Defense and Liability coverage is subject to the Defense and Liability Deductible indicated for this endorsement. You shall be responsible for such deductible amount as respects each "data compromise suit" covered under this endorsement.

# EXCLUSIONS, ADDITIONAL CONDITIONS AND DEFINITIONS APPLICABLE TO BOTH SECTION 1 AND SECTION 2

### EXCLUSIONS

The following additional exclusions apply to this coverage:

We will not pay for costs arising from the following:

1. Your intentional or willful complicity in a "personal

EXHIBIT A

Copy from re:SearchTX

data compromise".

2. Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by you.

3. Any "personal data compromise" occurring prior to the first inception of this Data Compromise Coverage endorsement or any coverage substantially similar to that described in this endorsement.

4. Costs to research or correct any deficiency. This includes, but is not limited to, any deficiency in your systems, procedures or physical security that may have contributed to a "personal data compromise".

5. Any fines or penalties. This includes, but is not limited to, fees or surcharges from affected financial institutions.

6. Any criminal investigations or proceedings.

7. Any extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

8. Any "personal data compromise" involving data that is being transmitted electronically, unless such data is encrypted to protect the security of the transmission.

9. Your reckless disregard for the security of "personally identifying information" or "personally sensitive information" in your care, custody or control.

10. That part of any "data compromise suit" seeking any non-monetary relief.

**ADDITIONAL CONDITIONS**

The following Additional Conditions apply to all coverages under this endorsement.

**A. Data Compromise Liability Defense**

1. We shall have the right and the duty to assume the defense of any applicable "data compromise suit" against you. You shall give us such information and cooperation as we may reasonably require.

2. You shall not admit liability for or settle any "data compromise suit" or incur any defense costs without our prior written consent.

3. If you refuse to consent to any settlement recommended by us and acceptable to the claimant, we may then withdraw from your defense by tendering control of the defense to you. From that point forward, you shall, at your own expense, negotiate or defend such "data compromise suit" independently of us. Our liability shall not exceed the amount for which the claim or suit could have been settled if such recommendation was consented to, plus defense

costs incurred by us, and defense costs incurred by you with our written consent, prior to the date of such refusal.

4. We shall not be obligated to pay any damages or defense costs, or to defend or continue to defend any "data compromise suit", after the Data Compromise Defense and Liability Limit has been exhausted.

5. We shall pay all interest on that amount of any judgment within the Data Compromise Defense and Liability Limit which accrues:

a. after entry of judgment; and

b. before we pay, offer to pay or deposit in court that part of the judgment within the Data Compromise Defense and Liability Limit or, in any case, before we pay or offer to pay the entire Data Compromise Defense and Liability Limit.

These interest payments shall be in addition to and not part of the Data Compromise Defense and Liability Limit.

**B. Duties in the Event of a "Data Compromise Suit"**

1. If a "data compromise suit" is brought against you, you must:

a. Immediately record the specifics of the "data compromise suit" and the date received; and

b. Provide us with written notice, as soon as practicable, but in no event more than 90 days after the date the "data compromise suit" is first received by you.

c. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "data compromise suit";

d. Authorize us to obtain records and other information;

e. Cooperate with us in the investigation, settlement or defense of the "data compromise suit";

f. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of loss to which this insurance may also apply; and

g. Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "data compromise suit".

2. You may not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

3. If you become aware of a claim or complaint that

EXHIBIT A

Copy from re:SearchTX

**BUSINESSOWNER'S – Texas - Data Compromise Coverage Endorsement**

may become a "data compromise suit", you shall promptly inform us of such claim or complaint.

**C. Due Diligence**

You agree to use due diligence to prevent and mitigate costs covered under this endorsement. This includes, but is not limited to, complying with, and requiring your vendors to comply with, reasonable and industry-accepted protocols for:

1. Providing and maintaining appropriate physical security for your premises, computer systems and hard copy files;

2. Providing and maintaining appropriate computer and Internet security;

3. Maintaining and updating at appropriate intervals backups of computer data;

4. Protecting transactions, such as processing credit card, debit card and check payments; and

5. Appropriate disposal of files containing "personally identifying information" or "personally sensitive information", including shredding hard copy files and destroying physical media used to store electronic data.

**D. Legal Advice**

We are not your legal advisor. Our determination of what is or is not covered under this Data Compromise Coverage endorsement does not represent advice or counsel from us about what you should or should not do.

**E. Pre-Notification Consultation**

You agree to consult with us prior to the issuance of notification to "affected individuals". We assume no responsibility under this Data Compromise Coverage for any services promised to "affected individuals" without our prior agreement. If possible, this pre-notification consultation will also include the designated service provider(s) as agreed to under Additional Condition F. Service Providers. You must provide the following at our pre-notification consultation with you:

1. The exact list of "affected individuals" to be notified, including contact information.

2. Information about the "personal data compromise" that may appropriately be communicated with "affected individuals".

3. The scope of services that you desire for the "affected individuals". For example, coverage may be structured to provide fewer services in order to make those services available to more "affected individuals" without exceeding the available Response Expenses Limit.

**F. Service Providers**

1. We will only pay under this Data Compromise Coverage for services that are provided by service providers approved by us. You must obtain our prior approval for any service provider whose expenses you want covered under this Data Compromise Coverage. We will not unreasonably withhold such approval.

2. Prior to the Pre-Notification Consultation described in Additional Condition E. above, you must come to agreement with us regarding the service provider(s) to be used for the Notification to Affected Individuals and Services to Affected Individuals. We will suggest a service provider. If you prefer to use an alternate service provider, our coverage is subject to the following limitations:

   a. Such alternate service provider must be approved by us;

   b. Such alternate service provider must provide services that are reasonably equivalent or superior in both kind and quality to the services that would have been provided by the service provider we had suggested; and

   c. Our payment for services provided by any alternate service provider will not exceed the amount that we would have paid using the service provider we had suggested.

**G. Services**

The following conditions apply as respects any services provided to you or any "affected individual" by us, our designees or any service firm paid for in whole or in part under this Data Compromise coverage:

1. The effectiveness of such services depends on your cooperation and assistance.

2. All services may not be available or applicable to all individuals. For example, "affected individuals" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

3. We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

4. You will have a direct relationship with the professional service firms paid for in whole or in part under this coverage. Those firms work for you.

**H. Prompt Payment of Claims**

1. Receipt of Notice of Claim.

   a. Not later than the 15th day after the date we receive notice of a claim, we will:

---

Copy from re:SearchTX

<span style="color:red">EXHIBIT A</span>

**BUSINESSOWNER'S – Texas -  Data Compromise Coverage Endorsement**

    **1)** acknowledge receipt of the claim;

    **2)** commence any investigation of the claim; and

  **b.** request from you all items, statements, and forms that we reasonably believe, at that time, will be required from you.

  **c.** We may make additional requests for information if during the investigation of the claim the additional requests are necessary.

  **d.** If the acknowledgment of receipt of a claim is not made in writing, we will make a record of the date, manner, and content of the acknowledgment.

**2.** Notice of Acceptance or Rejection of Claim.

  **a.** Except as provided by Subsection c, we will notify you in writing of the acceptance or rejection of a claim not later than the 15th business day after the date we receive all items, statements, and forms required by us to secure final proof of loss.

  **b.** If we reject the claim, the notice required by Subsection a. must state the reasons for the rejection.

  **c.** If we are unable to accept or reject the claim within the period specified by Subsection a., we, within that same period, will notify you of the reasons that we need additional time. We will accept or reject the claim not later than the 45th day after the date we notify you under this subsection.

**3.** Payment of Claim.

  **a.** Except as otherwise provided by this section, if we notify you under Subsection 2 that we will pay a claim or part of a claim, we will pay the claim not later than the fifth business day after the date notice is made.

  **b.** If payment of the claim or part of the claim is conditioned on the performance of an act by you, we will pay the claim not later than the fifth business day after the date the act is performed.

**4.** Delay in Payment of Claim.

  **a.** Except as otherwise provided, if we after receiving all items, statements, and forms reasonably requested and required under Subsection 1, delay payment of the claim for a period exceeding the period specified by applicable statutes or, if other statutes do not specify a period, for more than 60 days, we will pay damages and other items as provided by Texas Insurance Code Section 542.060.

  **b.** Subsection a. does not apply in a case in which it is found as a result of arbitration or litigation that a claim received by us is invalid and should not be paid by us.

## DEFINITIONS

With respect to the provisions of this endorsement only, the following definitions are added:

1. "Affected Individual" means any person who is your current, former or prospective customer, client, member, owner, director or employee and whose "personally identifying information" or "personally sensitive information" is lost, stolen, accidentally released or accidentally published by a "personal data compromise" covered under this endorsement. This definition is subject to the following provisions:

  a. "Affected individual" does not include any business or organization. Only an individual person may be an "affected individual".

  b. An "affected individual" must have a direct relationship with your interests as insured under this policy. The following are examples of individuals who would not meet this requirement:

    1) If you aggregate or sell information about individuals as part of your business, the individuals about whom you keep such information do not qualify as "affected individuals". However, specific individuals may qualify as "affected individuals" for another reason, such as being an employee of yours.

    2) If you store, process, transmit or transport records, the individuals whose "personally identifying information" or "personally sensitive information" you are storing, processing, transmitting or transporting for another entity do not qualify as "affected individuals". However, specific individuals may qualify as "affected individuals" for another reason, such as being an employee of yours.

    3) You may have operations, interests or properties that are not insured under this policy. Individuals who have a relationship with you through such other operations, interests or properties do not qualify as "affected individuals". However, specific individuals may qualify as "affected individuals" for another reason, such as being an employee of the operation insured under this policy.

  c. An "affected individual" may reside anywhere in the world.

EXHIBIT A

Copy from re:SearchTX

**BUSINESSOWNER'S – Texas - Data Compromise Coverage Endorsement**

2. "Data Compromise Defense Costs" means expenses resulting solely from the investigation, defense and appeal of any "data compromise suit" against you. Such expenses must be reasonable and necessary. They will be incurred by us. They do not include your salaries or your loss of earnings. They do include premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond.

3. "Data Compromise Liability"

   a. "Data compromise liability" means the following, when they arise from a "data compromise suit":

      1) Damages, judgments or settlements to "affected individuals";

      2) Defense costs added to that part of any judgment paid by us, when such defense costs are awarded by law or court order; and

      3) Pre-judgment interest on that part of any judgment paid by us.

   b. "Data compromise liability" does not mean:

      1) Damages, judgments or settlements to anyone who is not an "affected individual";

      2) Civil or criminal fines or penalties imposed by law;

      3) Punitive or exemplary damages;

      4) The multiplied portion of multiplied damages;

      5) Taxes; or

      6) Matters which may be deemed uninsurable under the applicable law.

4. "Data Compromise Suit"

   a. "Data Compromise Suit" means a civil proceeding in which damages to one or more "affected individuals" arising from a "personal data compromise" or the violation of a governmental statute or regulation are alleged. Such proceeding must be brought in the United States of America, Puerto Rico or Canada. "Data compromise suit" includes:

      1) An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent;

      2) Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent; or

      3) A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

   b. "Data compromise suit" does not mean any demand or action brought by or on behalf of someone who is:

      1) Your director or officer;

      2) Your owner or part-owner; or

      3) A holder of your securities;

   in their capacity as such, whether directly, derivatively, or by class action. "Data compromise suit" will include proceedings brought by such individuals in their capacity as "affected individuals", but only to the extent that the damages claimed are the same as would apply to any other "affected individual".

   c. "Data compromise suit" does not mean any demand or action brought by an organization, business, institution, or any other party that is not an "affected individual" or governmental entity. "Data compromise suit" does not mean any demand or action brought on behalf of an organization, business, institution, governmental entity or any other party that is not an "affected individual".

5. "Identity Theft" means the fraudulent use of "personally identifying information". This includes fraudulently using such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

   "Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

6. "Malware-Related Compromise" means a "personal data compromise" that is caused, enabled or abetted by a virus or other malicious code that, at the time of the "personal data compromise", is named and recognized by the CERT® Coordination Center, McAfee®, Secunia, Symantec or other comparable third party monitors of malicious code activity.

7. "Personal Data Compromise" means the loss, theft, accidental release or accidental publication of "personally identifying information" or "personally sensitive information" as respects one or more "affected individuals". If the loss, theft, accidental release or accidental publication involves "personally identifying information", such loss, theft, accidental release or accidental publication must result in or have the reasonable possibility of resulting in the fraudulent use of such information. This definition is subject to the following provisions:

   a. At the time of the loss, theft, accidental release or accidental publication, the "personally identifying information" or "personally sensitive information" need not be at the insured premises but must be in the direct care, custody or control of:

      1) You; or

      2) A professional entity with which you have a direct relationship and to which you (or an "affected individual" at your direction) have turned over (directly or via a professional transmission or transportation provider) such

---

EXHIBIT A

Copy from re:SearchTX

**BUSINESSOWNER'S – Texas -  Data Compromise Coverage Endorsement**

information for storage, processing, transmission or transportation of such information.

b.  "Personal data compromise" includes disposal or abandonment of "personally identifying information" or "personally sensitive information" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

1)  The failure to use appropriate safeguards must be accidental and not reckless or deliberate; and

2)  Such disposal or abandonment must take place during the time period for which this Data Compromise Coverage endorsement is effective.

c.  "Personal data compromise" includes situations where there is a reasonable cause to suspect that such "personally identifying information" or "personally sensitive information" has been lost, stolen, accidentally released or accidentally published, even if there is no firm proof.

d.  All incidents of "personal data compromise" that are discovered at the same time or arise from the same cause will be considered one "personal data compromise".

8.  "Personally Identifying Information" means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an "affected individual". This includes, but is not limited to, Social Security numbers or account numbers.

"Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses.

9.  "Personally Sensitive Information" means private information specific to an individual the release of which requires notification of "affected individuals" under any applicable law.

"Personally sensitive information" does not mean or include "personally identifying information".

10.  "Reckless Disregard" means that:

a.  The action or procedure is deliberate; and

b.  The action or procedure entails either a certainty or a high probability of causing or allowing a "personal data compromise".

All other provisions of this policy apply.

---

**BP 99 109 01 15**          Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.          **Page 8 of 8**

EXHIBIT A

Copy from re:SearchTX

**BUSINESSOWNER'S
BP 99 110 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

EQUIPMENT BREAKDOWN COVERAGE

**A.** The following coverages are added:

**1. Defense**

If a claim or "suit" is brought against you al-leging that you are liable for damage to property of another in your care, custody or control that was directly caused by an "acci-dent" to "covered equipment" we will either:

**a.** Settle the claim or "suit"; or

**b.** Defend you against the claim or "suit" but keep for ourselves the right to settle it at any point.

**2. Supplementary Payments**

We will pay, with respect to any claim or "suit" we defend:

**a.** All expenses we incur;

**b.** The cost of bonds to release attach-ments, but only for bond amounts within the Limit of Insurance. We do not have to furnish these bonds;

**c.** All reasonable expenses incurred by you at our request to assist us in the in-vestigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work;

**d.** All costs taxed against you in any "suit" we defend;

**e.** Pre-judgment interest awarded against you on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that pe-riod of time after the offer; and

**f.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, of-fered to pay, or deposited in court the part of the judgment that is within the Limit of Insurance shown in the Declara-tions.

These payments will not reduce the Limit of Insurance.

**B.** As respects Equipment Breakdown Coverage only, the following are added:

**1. Bankruptcy**

The bankruptcy or insolvency of you or your estate will not relieve us of an obligation un-der this coverage section.

**2. Legal Action Against Us**

No one may bring a legal action against us under this Equipment Breakdown coverage unless:

**a.** There has been full compliance with all the terms of this Equipment Breakdown coverage; and

**b.** The action is brought within 2 years and 1 day from the date that cause of action first accrues; or

**c.** We agree in writing that you have an ob-ligation to pay for damage to Covered Property of others or until the amount of that obligation has been determined by final judgment or arbitration award.  No one has the right under this policy to bring us into an action to determine your liability.

**C.** With respect to Equipment Breakdown Cover-age only, the following Definition is added:

"Suit" means a civil proceeding and includes:

**1.** An arbitration proceeding in which damages are claimed and to which you must submit or do submit with our consent; or

**2.** Any other alternative dispute resolution pro-ceeding in which damages are claimed and to which you submit with our consent.

EXHIBIT A

Copy from re:SearchTX

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE ENDORSEMENT - PROPERTY

This endorsement modifies insurance provided under the following:

BUSINESSOWNER'S COVERAGE FORM

Paragraph **D.1. Deductibles** of **SECTION I – PROPERTY** is replaced with the following:

**D.  Deductibles**

1.  We will not pay for loss or damage to Covered Property caused by or resulting from a Covered Cause of Loss as a result of one occurrence until the amount of such loss or damage exceeds the applicable Deductible shown in the Declarations or as set forth below.  We will then pay the amount of such loss or damage in excess of the Deductible up to the applicable Limit of Insurance of **Section 1 - Property**.  In the event of loss or damage to Covered Property caused by or resulting from a Covered Cause of Loss at one or more buildings at the same location, as a result of one occurrence, only the single largest deductible scheduled for loss at such building(s) will apply to all such loss or damage regardless of the number of buildings involved in the loss.  However, this Paragraph **D.1** does not apply to loss or damage from Earthquake or Windstorm or Hail causes of loss.

    **EXAMPLES**

    **Example 1** - Loss at multiple buildings, same location.

    A fire damages Buildings 1 and 2 which results in a spoilage loss at Buildings 3 and 4 due to a power outage from the fire.

    | | |
    |---|---|
    | Property Deductible – Building 1: | $250 |
    | Property Deductible – Building 2: | $250 |
    | Limit of Insurance – Building 1: | $60,000 |
    | Limit of Insurance – Building 2: | $80,000 |
    | Loss to Building 1: | $50,100 |
    | Loss to Building 2: | $70,000 |

    | | |
    |---|---|
    | Spoilage Deductible – Building 3 | : $500 |
    | Spoilage Deductible – Building 4 | : $500 |
    | Spoilage Limit of Insurance – Building 3: | $5,000 |
    | Spoilage Limit of Insurance – Building 4: | $2,000 |
    | Spoilage loss at Building 3: | $2,500 |
    | Spoilage loss at Building 4: | $1,500 |

    The largest deductible involved in the occurrence was the $500 spoilage deductible and will be subtracted from the total Loss Payable:

    ```
      $  50,100 – Building 1 loss
    + $  70,000 – Building 2 loss
    + $   2,500 – Spoilage loss at Building 3
    + $   1,500 – Spoilage loss at Building 4
      $ 124,100 – Total loss
    - $     500 – Largest deductible involved in loss
      $ 123,600 – Total loss payable
    ```

    **Example 2** - Identical loss occurs but only at building 1, no loss at other buildings (same deductibles and limits)

    | | |
    |---|---|
    | Property Deductible – Building 1: | $250 |
    | Limit of Insurance – Building 1: | $60,000 |
    | Loss to Building 1: | $50,100 |
    | Spoilage Loss at Building 1: | $2,500 |

    The largest deductible involved in the occurrence was the $500 spoilage deductible for Building 1 and will be subtracted from the total Loss Payable.

    ```
      $  50,100 - Building 1 loss
    + $   2,500 - Spoilage loss at Building 1
      $  52,600 - Total Loss at Building 1
    - $     500 - Largest deductible involved in loss
      $  52,100 - Total loss payable.
    ```

---

BP 99 188 06 16      Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.      **Page 1 of 1**

EXHIBIT A

Copy from re:SearchTX

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HOTELS/MOTELS

This endorsement modifies insurance provided under the following:

BUSINESSOWNER'S COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Businessowner's Coverage Form apply, unless modified by this endorsement.

**A.** The following is added to Paragraph **A.1.a.** of **Section I – Property:**

**(7)** Indoor swimming pools which are an integral part of the buildings.

**B .** Paragraph **A.1.b.(2)** of **Section I – Property** is replaced by the following:

**(2)** Property of others that is in your care, custody or control, excluding property belonging to guests staying at your hotel/motel, except as otherwise provided in Loss Payment Property Loss Condition Paragraph **E.5.d.(3)(b);**

**C.** The following is added to Paragraph **A.1.b.** of **Section I – Property:**

**(6)** Your personal property in hotel/motel rooms furnished by you as a hotel/motel operator.

**D.** The following is added to Paragraph **A.5. Additional Coverages** of **Section I – Property:**

**s. Lock Replacement**

We will pay the necessary expenses you incur to replace locks for hotel/motel rooms resulting from theft or copying of keys or any other legitimate security concern. The most we will pay under this Additional Coverage during each policy period is $2,500.

This insurance does not apply to loss caused by:

**(1)** Vandalism; or

**(2)** Wear and Tear.

Lock replacement coverage is not subject to a deductible.

**t. Web Sites**

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" caused by direct physical loss or damage by a Covered Cause of Loss to:

**(a)** The operation of your business web site at a described location; or

**(b)** The operation of your business web site at the premises of a vendor acting as your service provider.

The most we will pay for loss under this Additional Coverage in any one occurrence is the lesser of:

**(a)** The loss you sustain during the 7-day period immediately following the first 12 hours after the suspension of your website operations; or

**(b)** $50,000.

The most we will pay for loss under this Additional Coverage during each policy period is $100,000.

**u. Reward Payment**

**(1)** We will reimburse you for rewards paid as follows:

**(a)** Up to $5,000 to an eligible person for information leading to the arrest and conviction of any person or persons committing a crime resulting in loss of or damage to Covered Property from a Covered Cause of Loss. However, we will pay no more than the lesser of the following amounts:

**(i)** Actual cash value of the Covered Property at the time of loss or damage, but not more than the amount required to repair or replace it; or

**(ii)** The amount determined by the loss settlement procedure applicable to the Covered Property under the Loss Payment Condition.

Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.

EXHIBIT A

Copy from re:SearchTX

(b) Up to $5,000 to an eligible person for the return of stolen Covered Property, when the loss is caused by theft. However, we will pay no more than the lesser of the following amounts:

(i) Actual cash value based on the condition of the Covered Property at the time it is returned, but not more than the amount required to repair or replace it; or

(ii) The amount determined by the loss settlement procedure applicable to the returned Covered Property under the Loss Payment Condition.

(2) This Additional Coverage applies subject to the following conditions:

(a) An eligible person means that person designated by a law enforcement agency as being the first to voluntarily provide the information leading to the arrest and conviction or return of the stolen Covered Property, and who is not:

(i) You or any family member;

(ii) Your employee or any of his or her family members;

(iii) An employee of a law enforcement agency;

(iv) An employee of a business engaged in property protection;

(v) Any person who had custody of the Covered Property at the time the theft was committed; or

(vi) Any person involved in the crime.

(b) No reward will be reimbursed unless and until the person(s) committing the crime is (are) convicted or the Covered Property is returned.

(c) The lesser of the amount of the reward or $5,000 is the most we will reimburse for loss under this Additional Coverage in any one occurrence.

**v. Credit Card Slips**

We will pay for amounts you are unable to collect due to loss of or damage to credit card slips while located at the described premises as the result of a Covered Cause of Loss.

It is your responsibility to establish the amount of the loss under this Additional Coverage.  If it is not possible, the amount of the loss will be determined as follows:

(1) If you have been in business for more than twelve months at the location of the loss, one-thirtieth (1/30) of the average monthly amount of credit card slips will be considered as average daily credit card slips for that location.

The twelve months immediately preceding the discovery of the loss will be used to determine the average monthly amount.

(2) If you have been in business for less than twelve months at the location of the loss, the average daily credit card slips shall be one-thirtieth (1/30) of the average monthly amount of credit card slips for the number of months you have been in business at that location.

(3) The average daily credit card slips will be multiplied by the number of days for which slips are lost to determine the amount of the loss subject to the maximum limit indicated below.

The most we will pay as a result of loss or damage to credit card slips under this Additional Coverage during each policy period is $10,000.

E. Our obligation under this coverage applies only to the amount of damages in excess of any deductible amount stated in the Declarations as applicable to this coverage.

F. The following is added to Paragraph **A. Coverages** of **Section II – Liability:**

**3. Liability For Guests' Property**

a. We will pay those sums that you become legally obligated to pay as damages because of loss or destruction of, or damage to property belonging to your hotel/motel guests while the property is on your premises or in your possession. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Paragraph **D – Liability And Medical Expenses Limits Of Insurance** in **Section II** – **Liability;** and

(2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

EXHIBIT A

Copy from re:SearchTX

**b.** This insurance applies to damages resulting from the loss or destruction of, or damage to property belonging to hotel/motel guests only if the loss or destruction of, or damage to property took place in the "coverage territory" during the policy period.

**c.** This coverage does not apply to the following property:

(1) Samples or articles held for sale;

(2) Vehicles, including equipment, accessories or any property contained in or on a vehicle; and

(3) Property belonging to your guests while the property is in a "safe deposit box" on your premises.

**G.** The following is added to Paragraph **B. Exclusions** of **Section II – Liability:**

**4. Applicable To Liability For Guests' Property**

This insurance does not apply to:

**a.** Liability excluded under Business Liability Coverage.

However, with respect to the coverage provided for damage to Guests' Property, Exclusion **B.1.k.(4)** of **Section II – Liability** does not apply;

**b.** Dishonest acts committed by you, your partners, members or managers;

**c.** Destruction of or damage to property resulting from the spilling, upsetting or leaking of any food or liquid;

**d.** Loss or destruction of or damage to property resulting from seizure or destruction of the property by order of governmental authority; and

**e.** Liability incurred from your release of any other person or organization from legal liability.

**H.** The following is added to Paragraph **D. Liability And Medical Expenses Limits Of Insurance** of **Section II – Liability:**

**5. Liability For Guests' Property Limits Of Insurance**

**a.** The most we will pay for all damages because of loss or destruction of or damage to property belonging to your guests in any one "occurrence", regardless of the number of guests, is $25,000 unless a higher amount is shown in the Declarations.

**b.** Subject to the applicable limit stated above in **5.a.,** the most we will pay for all damages because of loss or destruction of or damage to property belonging to any one guest is $1,000, unless a higher amount is shown in the Declarations.

All loss, destruction or damage involving a single act or series of related acts whether caused by one or more persons is considered one "occurrence".

**I.** For coverage provided under this endorsement the following definition is added to **Section II – Liability:**

**23.** "Safe Deposit Box" means a box or safe used for safe storage of valuables. The box or safe must be in an area inaccessible to the public whereby the valuables are turned over to the custody of a hotel/motel representative. "Safe deposit box" does not include any safe or storage facility in hotel/motel units occupied by guests.

EXHIBIT A

Copy from re:SearchTX

**BUSINESSOWNER'S
BP 99 21 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HOTELS/MOTELS DELUXE

This endorsement modifies insurance provided under the following:

BUSINESSOWNER'S COVERAGE FORM

This endorsement provides coverage only for those premises described in the Declarations for which a premium is shown for the Hotel/Motel Deluxe Endorsement.

**Section I - Property** is amended as follows**:**

**A.** Paragraph **A.6.c.** is replaced with the below

**c. Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor:

**(1)** Fences, signs (other than signs attached to buildings), including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:
**(a)** Fire;
**(b)** Lightning;
**(c)** Explosion;
**(d)** Riot or Civil Commotion; or
**(e)** Aircraft or Auto

**(2)** Radio and television antennas (including satellite dishes), including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:
**(a)** Fire;
**(b)** Lightning;
**(c)** Windstorm;
**(d)** Ice, Snow, Sleet or Hail;
**(e)** Explosion;
**(f)** Riot or Civil Commotion; and
**(g)** Aircraft.

**(3)** Outdoor furniture permanently anchored to the ground; decorative structures, such as gazebos, footbridges and swings permanently anchored to the ground; stone or metal monuments or sculptures (metal must be 11 gauge or thicker) permanently anchored to the ground. Loss or damage must be caused by or result from any of the following causes of loss:

**(a)** Fire;
**(b)** Lightning;
**(c)** Windstorm;
**(d)** Explosion;
**(e)** Riot or Civil Commotion; and
**(f)** Aircraft or Auto.

**(4)** Trees, shrubs, plants and lawn, including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:
**(a)** Fire;
**(b)** Lightning;
**(c)** Windstorm;
**(d)** Explosion;
**(e)** Riot or Civil Commotion; and
**(f)** Aircraft or Auto.

The most we will pay for loss or damage under (1), (2) and (3) of this Extension is $10,000 per any one occurrence subject to a $30,000 annual aggregate limit.

The most we will pay for loss or damage under (4) of this Extension is an $80,000 per premises annual aggregate limit, $25,000 for any one occurrence, but not more than $2,000 for any one tree, shrub or plant; and not more than $5,000 for lawn.

As used in this coverage extension "Auto" means:

**a.** a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

---

Copy from re:SearchTX

EXHIBIT A

However, "auto" does not include "mobile equipment".

**B.** Paragraph **A.6.d.** is replaced with the below

**d. Personal Effects**
You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees. This extension does not apply to:

**(1)** Tools or equipment; or
**(2)** Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $25,000 at each described premises.

**C.** The following is added to Paragraph **A.6 Coverage Extensions**

**g. Checked Coats & Bags**
**(1)** You may extend the insurance provided by this policy to apply to "Checked Coats & Bags" that are in your care, custody or control, of you and/or your employees in a segregated room, which is staffed by you or your employees, to which only you and your employees have access.

**(2)** This coverage extension is subject to the Loss Payment, Property Loss Condition Paragraph **E.5.d.(3)(b).**

**(3)** The Limitation on furs, fur garments and garments trimmed with fur in Paragraph **A.4.b.(1)** does not apply to "Checked Coats & Bags" under this coverage extension.

**(4)** The most we will pay for a covered cause of loss under this coverage extension is:

**(a)** a $100,000 annual aggregate limit for each premises described   in the Declarations for which a    premium is shown for the Hotels/Motels Deluxe Endorsement;

**(b)** $50,000 for any one occurrence;

**(c)** $5,000 for any one customer.

**(5)** We will not pay for loss or damage for any contents of "Checked Coats & Bags".

**D.** The following is added to Paragraph **A.1.b.**:

**(6) Guests Property**
Personal Property belonging to your guest which is:
**(a)** Located in or on the buildings at the described premises or in the open (or in a vehicle) within 1,000 feet of the described premises; or
**(b)** In your, care, custody and control.

The most we will pay for all loss or damage to Guests' Property in any one occurrence is $10,000.

The most we will pay for all loss or damage to Guests' Property in any one policy period is $50,000.

Copy from re:SearchTX

EXHIBIT A

**BUSINESSOWNER'S**
**BP 99 60 03 12**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WATER BACK-UP AND SUMP OVERFLOW

This endorsement modifies insurance provided under the following:

BUSINESSOWNER'S COVERAGE FORM

**SCHEDULE**

| Premises Number | Covered Property Annual Aggregate Limit Of Insurance | Business Income And Extra Expense Annual Aggregate Limit Of Insurance |
|---|---|---|
| Location 001, Building 001 | $10,000 | $10,000 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

**A.** We will pay for direct physical loss or damage to Covered Property, covered under Section **I –** Property, caused by or resulting from:

  **1.** Water or waterborne material which backs up through or overflows or is otherwise discharged from a sewer or drain; or

  **2.** Water or waterborne material which overflows or is otherwise discharged from a sump, sump pump or related equipment, even if the overflow or discharge results from mechanical breakdown of a sump pump or its related equipment.

However, with respect to Paragraph **A.2.,** we will not pay the cost of repairing or replacing a sump pump or its related equipment in the event of mechanical breakdown.

***THIS IS NOT FLOOD INSURANCE.  We will not pay for loss or damage from water or other materials that back up or overflow  from any sewer, drain or sump that itself is caused, directly or indirectly, in whole or in part, by any flood.  Flood means the overflow of surface water, waves, tides, tidal waves, streams, or other bodies of water, or their spray, all whether driven by wind or not.***

**B.** The coverage described in Paragraph **A.** of this endorsement does not apply to loss or damage resulting from an insured's failure to:

  **1.** Keep a sump pump or its related equipment in proper working condition; or

  **2.** Perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

**C.** The most we will pay for the coverage provided under this endorsement for all direct physical loss or damage to Covered Property is the Covered Property Annual Aggregate Limit of Insurance. That limit is $5,000 per location, unless a different Covered Property Annual Aggregate Limit of Insurance is indicated in the Schedule of this endorsement.

The applicable Covered Property Annual Aggregate Limit of Insurance is the most we will pay under this endorsement for the total of all direct physical loss or damage sustained in any one policy year, regardless of the number of occurrences that cause or result in loss or damage to Covered Property. If loss payment for the first such occurrence does not exhaust the applicable Limit of Insurance, then the balance of that Limit is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**D.** The following provisions apply to **Section I – Property** and supersede any provisions to the contrary:

The most we will pay under:

EXHIBIT A

Copy from re:SearchTX

**BUSINESSOWNER'S – Water Back-Up and Sump Overflow Endorsement**

1. Paragraph **A.5.f. Business Income** Additional Coverage for all loss of Business Income you sustain due to the necessary suspension of your "operations" caused by direct physical loss or damage to Covered Property as described in Paragraph **A.** of this endorsement; and

2. Paragraph **A.5.g. Extra Expense** Additional Coverage for all necessary Extra Expense you incur and that you would not have incurred if there had been no direct physical loss or damage to Covered Property as described in Paragraph **A.** of this endorsement;

is the Business Income And Extra Expense Annual Aggregate Limit of Insurance. That limit is $5,000 per location, unless a different Business Income And Extra Expense Annual Aggregate Limit of Insurance is shown in the Schedule.

The applicable Business Income And Extra Expense Annual Aggregate Limit of Insurance is the most we will pay under this endorsement for the total of all loss of Business Income you sustain and Extra Expense you incur in any one policy year, regardless of the number of occurrences that cause or result in loss or damage to Covered Property as described in Paragraph **A.** of this endorsement. If loss payment during an earlier "period of restoration" in the policy year does not exhaust the applicable Limit of Insurance, then the balance of that Limit is available for loss of Business Income you sustain or Extra Expense you incur during a subsequent "period of restoration" beginning in, but not after, that policy year. With respect to a "period of restoration" which begins in one policy year and continues in a subsequent policy year(s), all loss of Business Income you sustain or Extra Expense you incur is deemed to be sustained or incurred in the policy year in which the "period of restoration" began.

**E.** With respect to the coverage provided under this endorsement, the **Water** Exclusion in **Section I – Property** is replaced by the following exclusion:

**Water**

1. Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

2. Mudslide or mudflow; or

3. Water under the ground surface pressing on, or flowing or seeping through:

    **a.** Foundations, walls, floors or paved surfaces;

    **b.** Basements, whether paved or not; or

    **c.** Doors, windows or other openings; or

4. Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **1.** or **3.**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **1.** through **4.,** is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **1.** through **4.,** results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

EXHIBIT A

Copy from re:SearchTX

POLICY NUMBER:  TOBP845751

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - GRANTOR OF FRANCHISE

Holiday Hospitality Franchising LLC, Six Continents Hotels Inc, their parents, subsidiaries and affiliates are named as additional insured

EXHIBIT A

Copy from re:SearchTX

FILED
4/3/2019 4:48 PM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Victoria Angeles

Case 5:19-cv-00558-JKP-RBF   Document 1-1   Filed 05/24/19   Page 84 of 101

# CIVIL CASE INFORMATION SHEET

**2019CI06848**

| CAUSE NUMBER (FOR CLERK USE ONLY): _____ | COURT (FOR CLERK USE ONLY): _____ |
|---|---|

131st

STYLED Top Class Hospitality, LLC v. AmGuard Insurance Company and David Nesbit

(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|---|
| Name:<br><br>Andrew Slania | Email:<br><br>aslaina@raiznerlaw.com | Plaintiff(s)/Petitioner(s):<br><br>Top Class Hospitality, LLC | ☑Attorney for Plaintiff/Petitioner<br>☐Pro Se Plaintiff/Petitioner<br>☐Title IV-D Agency<br>☐Other: _____ |
| Address:<br><br>2402 Dunlavy St. | Telephone:<br><br>713-554-9099 | | Additional Parties in Child Support Case: |
| City/State/Zip:<br><br>Houston, TX 77006 | Fax:<br><br>713-554-9098 | Defendant(s)/Respondent(s):<br><br>AmGuard Insurance Company,<br><br>David Nesbit | Custodial Parent:<br><br>Non-Custodial Parent: |
| Signature: | State Bar No:<br><br>24056338 | [Attach additional page as necessary to list all parties] | Presumed Father: |

**2. Indicate case type, or identify the most important issue in the case** (select only 1):

| *Civil* | | | *Family Law* | |
|---|---|---|---|---|

| Contract | Injury or Damage | Real Property | Marriage Relationship | Post-judgment Actions (non-Title IV-D) |
|---|---|---|---|---|
| *Debt/Contract*<br>☐Consumer/DTPA<br>☐Debt/Contract<br>☐Fraud/Misrepresentation<br>☐Other Debt/Contract:<br>_____<br>*Foreclosure*<br>☐Home Equity—Expedited<br>☐Other Foreclosure<br>☐Franchise<br>☐Insurance<br>☐Landlord/Tenant<br>☐Non-Competition<br>☐Partnership<br>☐Other Contract:<br>_____ | ☐Assault/Battery<br>☐Construction<br>☐Defamation<br>*Malpractice*<br>☐Accounting<br>☐Legal<br>☐Medical<br>☐Other Professional<br>Liability:<br>_____<br>☐Motor Vehicle Accident<br>☐Premises<br>*Product Liability*<br>☐Asbestos/Silica<br>☐Other Product Liability<br>List Product:<br>_____<br>☐Other Injury or Damage:<br>_____ | ☐Eminent Domain/<br>Condemnation<br>☐Partition<br>☐Quiet Title<br>☐Trespass to Try Title<br>☐Other Property:<br>_____<br><br>**Related to Criminal Matters**<br>☐Expunction<br>☐Judgment Nisi<br>☐Non-Disclosure<br>☐Seizure/Forfeiture<br>☐Writ of Habeas Corpus—<br>Pre-indictment<br>☐Other: _____ | ☐Annulment<br>☐Declare Marriage Void<br>*Divorce*<br>☐With Children<br>☐No Children<br><br><br>**Other Family Law**<br>☐Enforce Foreign<br>Judgment<br>☐Habeas Corpus<br>☐Name Change<br>☐Protective Order<br>☐Removal of Disabilities<br>of Minority<br>☐Other:<br>_____ | ☐Enforcement<br>☐Modification—Custody<br>☐Modification—Other<br>**Title IV-D**<br>☐Enforcement/Modification<br>☐Paternity<br>☐Reciprocals (UIFSA)<br>☐Support Order<br><br>**Parent-Child Relationship**<br>☐Adoption/Adoption with<br>Termination<br>☐Child Protection<br>☐Child Support<br>☐Custody or Visitation<br>☐Gestational Parenting<br>☐Grandparent Access<br>☐Parentage/Paternity<br>☐Termination of Parental<br>Rights<br>☐Other Parent-Child:<br>_____ |

| Employment | Other Civil | | |
|---|---|---|---|
| ☐Discrimination<br>☐Retaliation<br>☐Termination<br>☐Workers' Compensation<br>☐Other Employment:<br>_____ | ☐Administrative Appeal<br>☐Antitrust/Unfair<br>Competition<br>☐Code Violations<br>☐Foreign Judgment<br>☐Intellectual Property | ☐Lawyer Discipline<br>☐Perpetuate Testimony<br>☐Securities/Stock<br>☐Tortious Interference<br>☐Other: _____ | |

| Tax | *Probate & Mental Health* | |
|---|---|---|
| ☐Tax Appraisal<br>☐Tax Delinquency<br>☐Other Tax | *Probate/Wills/Intestate Administration*<br>☐Dependent Administration<br>☐Independent Administration<br>☐Other Estate Proceedings | ☐Guardianship—Adult<br>☐Guardianship—Minor<br>☐Mental Health<br>☐Other: _____ |

**3. Indicate procedure or remedy, if applicable** (may select more than 1):

| | | |
|---|---|---|
| ☐Appeal from Municipal or Justice Court<br>☐Arbitration-related<br>☐Attachment<br>☐Bill of Review<br>☐Certiorari<br>☐Class Action | ☐Declaratory Judgment<br>☐Garnishment<br>☐Interpleader<br>☐License<br>☐Mandamus<br>☐Post-judgment | ☐Prejudgment Remedy<br>☐Protective Order<br>☐Receiver<br>☐Sequestration<br>☐Temporary Restraining Order/Injunction<br>☐Turnover |

**4. Indicate damages sought** (do not select if it is a family law case):
☐Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
☐Less than $100,000 and non-monetary relief
☐Over $100,000 but not more than $200,000
☐Over $200,000 but not more than $1,000,000
☑Over $1,000,000

[ Print Form ]

Rev 2/13

Copy from re:SearchTX

FILED
5/1/2019 11:31 AM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Michael Yanes

Case 5:19-cv-00558-JKP-RBF   Document 1-1   Filed 05/24/19   Page 85 of 101

## 131st District Court of BEXAR County, Texas
100 DOLOROSA ST, #202 SAN ANTONIO TX 78205

## CASE #: 2019CI06848

**TOP CLASS HOSPITALITY, LLC**

*Plaintiff*
**vs**
**AMGUARD INSURANCE COMPANY AND DAVID NESBIT**

*Defendant*

### AFFIDAVIT OF SERVICE

I, **ALBERTO CASAS LICON**, make statement to the fact;
That I am a competent person more than 18 years of age or older and not a party to
this action, nor interested in outcome of the suit. That I received the documents stated
below on 04/24/19 11:08 am, instructing for same to be delivered upon Nesbit, David.

That I delivered to        : Nesbit, David.

the following             : CITATION; PLAINTIFF'S ORIGINAL PETITION AND JURY DEMAND;
                            EXHIBIT A

at this address           : 29616 No Le Hace Dr
                            Fair Oaks Ranch, Bexar County, TX 78015

Manner of Delivery        : By PERSONALLY delivering the document(s) to the person
                            above.

Delivered on              : Friday April 26, 2019 3:09 pm


My name is ALBERTO CASAS LICON, my date of birth is June 2nd, 1970, and my address
is PCP San Antonio - Corp, 830 NE Loop 410 Ste 209, San Antonio TX 78209, and U.S.A.
I declare under penalty of perjury that the foregoing is true and correct.
Executed in El Paso County, State of Texas, on the _____26_____ day of
_____April_____, 20 19.

                                    _____
                                    ALBERTO CASAS LICON          Declarant
                                    2766

                                    Texas Certification#: PSC-12313 Exp. 09/30/2019

                                            PCP Inv#: P19400192
                                            SO  Inv#: A19407091
                                            Reference : 2019-06848
                            + Service Fee:  75.00
                              Witness Fee:    .00
                              Mileage Fee:    .00
serversa                                    Raizner, Jeffrey L.
eaffidavits@pcpusa.net                      **E-FILE RETURN**

AX02A19407091

Copy from re:SearchTX

PRIVATE PROCESS

Case Number: 2019-CI-06848



2019CI06848  S00002

**TOP CLASS HOSPITALITY LLC**
**VS.**
**AMGUARD INSURANCE COMPANY ET AL**
(Note:Attached Document May Contain Additional Litigants.)

IN THE DISTRICT COURT
131st JUDICIAL DISTRICT
BEXAR COUNTY, TEXAS

## CITATION

"THE STATE OF TEXAS"

Directed To:   DAVID NESBIT

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this CITATION and ORIGINAL PETITION AND JURY DEMAND , a default judgment may be taken against you." Said ORIGINAL PETITION AND JURY DEMAND was filed on the 3rd day of April, 2019.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS 8TH DAY OF APRIL A.D., 2019.

ANDREW P SLANIA
ATTORNEY FOR PLAINTIFF
2402 DUNLAVY ST
HOUSTON, TX 77006-2404



**Mary Angie Garcia**
Bexar County District Clerk
101 W. Nueva, Suite 217
San Antonio, Texas  78205

By: *Laura Castillo*, Deputy

---

TOP CLASS HOSPITALITY LLC
VS
AMGUARD INSURANCE COMPANY ET AL

**Officer's Return**

Case Number: 2019-CI-06848
Court: 131st Judicial District Court

I received this CITATION on _____ at _____o'clock ___M and ( ) executed it by delivering a copy of the CITATION with attached ORIGINAL PETITION AND JURY DEMAND  the date of delivery endorsed on it to the defendant, _____, in person on the _____ at _____ o'clock ___M. at _____ or ( ) not executed because _____

Fees:_____ Badge/PPS #:_____ Date certification expires:_____

_____County, Texas

By:_____

OR: VERIFICATION OF RETURN (If not served by a peace officer) SWORN TO THIS _____

_____
NOTARY PUBLIC, STATE OF TEXAS

OR: My name is _____, my date of birth is _____, and my address is _____, _____ County.

I declare under penalty of perjury that the foregoing is true and correct. Executed in _____ County, State of Texas, on the _____ day of_____, 20____.

_____
Declarant

RETURN TO COURT (DK002)

Copy from re:SearchTX

FILED
5/8/2019 7:35 AM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Natasha Gonzalez

Case 5:19-cv-00558-JKP-RBF   Document 1-1   Filed 05/24/19   Page 87 of 101

District Court of BEXAR County, Texas

100 DOLOROSA STE #202 SAN ANTONIO TX 78205

## CASE #: 2019CI06848

TOP CLASS HOSPITALITY, LLC

**Amended**

Plaintiff

**vs**

AMGUARD INSURANCE COMPANY AND DAVID NESBIT

Defendant

### AFFIDAVIT OF SERVICE

I, **ALBERTO CASAS LICON**, make statement to the fact;
That I am a competent person more than 18 years of age or older and not a party to this action, nor interested in outcome of the suit.  That I received the documents stated below on 04/24/19 11:08 am, instructing for same to be delivered upon Nesbit, David.

That I delivered to       : Nesbit, David.

the following            : CITATION; PLAINTIFF'S ORIGINAL PETITION AND JURY DEMAND;
                           EXHIBIT A

at this address          : 29616 No Le Hace Dr
                           Fair Oaks Ranch, Bexar County, TX 78015

Manner of Delivery       : By PERSONALLY delivering the document(s) to the person
                           above.

Delivered on             : Friday April 26, 2019 3:09 pm

My name is ALBERTO CASAS LICON, my date of birth is June 2nd, 1970, and my address is PCP San Antonio - Corp, 830 NE Loop 410 Ste 209, San Antonio TX 78209, and U.S.A. I declare under penalty of perjury that the foregoing is true and correct. Executed in El Paso County, State of Texas, on the _____ 24 _____ day of ___April___, 20 19 .

_____
ALBERTO CASAS LICON                    Declarant
2766

Texas Certification#: PSC-12313 Exp. 09/30/2019

                    PCP Inv#: P19400192
                    SO  Inv#: A19407091
                    Reference : 2019-06848

+ Service Fee:  75.00
  Witness Fee:    .00
  Mileage Fee:    .00

                    Raizner, Jeffrey L.

serversa
eaffidavits@pcpusa.net

**E-FILE RETURN**

AX02A19407091

Copy from re:SearchTX

PRIVATE PROCESS

Case Number: 2019-CI-06848



2019CI06848  S00002

**TOP CLASS HOSPITALITY LLC**
**VS.**
**AMGUARD INSURANCE COMPANY ET AL**
(Note:Attached Document May Contain Additional Litigants.)

IN THE DISTRICT COURT
131st JUDICIAL DISTRICT
BEXAR COUNTY, TEXAS

## CITATION

"THE STATE OF TEXAS"

Directed To:   DAVID NESBIT

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this CITATION and ORIGINAL PETITION AND JURY DEMAND , a default judgment may be taken against you." Said ORIGINAL PETITION AND JURY DEMAND was filed on the 3rd day of April, 2019.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS 8TH DAY OF APRIL A.D., 2019.

ANDREW P SLANIA
ATTORNEY FOR PLAINTIFF
2402 DUNLAVY ST
HOUSTON, TX 77006-2404



**Mary Angie Garcia**
Bexar County District Clerk
101 W. Nueva, Suite 217
San Antonio, Texas  78205

By: *Laura Castillo*, Deputy

---

TOP CLASS HOSPITALITY LLC
VS
AMGUARD INSURANCE COMPANY ET AL

**Officer's Return**

Case Number: 2019-CI-06848
Court: 131st Judicial District Court

I received this CITATION on _____ at _____o'clock ___M. and:( ) executed it by delivering a copy of the CITATION with attached ORIGINAL PETITION AND JURY DEMAND the date of delivery endorsed on it to the defendant, _____, in person on the _____ at _____ o'clock ___M. at:_____ or ( ) not executed because _____.

Fees:_____ Badge/PPS #:_____ Date certification expires:_____,

_____ County, Texas

By: _____

OR: VERIFICATION OF RETURN (If not served by a peace officer) SWORN TO THIS _____

_____
NOTARY PUBLIC, STATE OF TEXAS

OR: My name is _____, my date of birth is _____, and my address is _____, _____ County.

I declare under penalty of perjury that the foregoing is true and correct. Executed in _____ County, State of Texas, on the _____ day of_____, 20_____.

_____
Declarant

RETURN TO COURT (DK002)

Copy from re:SearchTX

FILED
4/29/2019 11:47 AM
Mary Angie Garcia
Case 5:19-cv-00558-JKP-RBF   Document 1-1   Filed 05/24/19   Page 89 of 101
Bexar County District Clerk
Accepted By: Leticia Leija

## 131st District Court of BEXAR County, Texas
100 DOLOROSA ST, #202 SAN ANTONIO TX 78205

## CASE #: 2019CI06848

**TOP CLASS HOSPITALITY, LLC**

*Plaintiff*

**vs**

**AMGUARD INSURANCE COMPANY AND DAVID NESBIT**

*Defendant*

### AFFIDAVIT OF SERVICE

I, **TRACY JONES**, make statement to the fact;
That I am a competent person more than 18 years of age or older and not a party to
this action, nor interested in outcome of the suit.  That I received the documents stated
below on 04/26/19 12:35 pm, instructing for same to be delivered upon Amguard Insurance
Company By Delivering To Registered Agent Ct Corporation System.

| | |
|---|---|
| That I delivered to | : Amguard Insurance Company By Delivering To Registered Agent Ct Corporation System. By Delivering to MelissaTorres, Intake Specialist |
| the following | : CITATION; PLAINTIFF'S ORIGINAL PETITION AND JURY DEMAND; EXHIBIT A |
| at this address | : 1999 Bryan Street, Suite 900 Dallas, Dallas County, TX 75201 |
| Manner of Delivery | : By PERSONALLY delivering the document(s) to the person above. |
| Delivered on | : Friday APR 26, 2019 2:16 pm |

My name is TRACY JONES, my date of birth is JUL 15th, 1969, and my address is
Professional Civil Process Dallas, Inc., 2300 Valley View Ln, Ste 612, Irving TX
75062, and U.S.A.  I declare under penalty of perjury that the foregoing is true and
correct.

Executed in _Dallas_ County, State of Texas, on the _26th_ day of
_April_, 20_19_.

_Tracy Jones_
TRACY JONES                                                    Declarant
2707

Texas Certification#: PSC-14958 Exp. 05/31/2020

PCP Inv#: D19400421
SO  Inv#: A19407089
Reference : 2019-06848

+ Service Fee:  75.00
Witness Fee:     .00
Mileage Fee:     .00

AX02A19407089
tomcat
eaffidavits@pcpusa.net

Raizner, Jeffrey L.

**E-FILE RETURN**

Copy from re:SearchTX

PRIVATE PROCESS

Case Number: 2019-CI-06848



2019CI06848  S00001

**TOP CLASS HOSPITALITY LLC**
**vs.**
**AMGUARD INSURANCE COMPANY ET AL**
(Note:Attached Document May Contain Additional Litigants.)

IN THE DISTRICT COURT
131st JUDICIAL DISTRICT
BEXAR COUNTY, TEXAS

# CITATION

"THE STATE OF TEXAS"

Directed To:   AMGUARD INSURANCE COMPANY
BY SERVING: CT CORPORATION SYSTEM

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk  who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were  served this CITATION and ORIGINAL PETITION AND JURY DEMAN  , a default judgment may be taken against you." Said ORIGINAL PETITION AND JURY DEMAN  was filed on the  3rd day of April, 2019.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS  8TH DAY OF APRIL A.D., 2019.

ANDREW P SLANIA
ATTORNEY FOR PLAINTIFF
2402 DUNLAVY ST
HOUSTON, TX 77006-2404



**Mary Angie Garcia**
Bexar County District Clerk
101 W. Nueva, Suite 217
San Antonio, Texas  78205

By: *Laura Castillo*, Deputy

---

TOP CLASS HOSPITALITY LLC
VS
AMGUARD INSURANCE COMPANY ET AL

**Officer's Return**

Case Number: 2019-CI-06848
Court: 131st Judicial District Court

I received this CITATION on _____ at _____o'clock ___M. and ( ) executed it by delivering a copy of the CITATION with attached ORIGINAL PETITION AND JURY  DEMAN  the  date  of  delivery  endorsed  on  it  to  the  defendant, _____, in  person  on  the _____ at _____ o'clock ___M. at:_____ or ( ) not executed because _____.

Fees:_____ Badge/PPS #:_____ Date certification expires:_____

_____ County, Texas

By:_____

OR: VERIFICATION OF RETURN (If not served by a peace officer) SWORN TO THIS _____

_____
NOTARY PUBLIC, STATE OF TEXAS

OR: My name is _____, my date of birth is _____, and my address is _____, _____ County.

I declare under penalty of perjury that the foregoing is true and correct. Executed in _____ County, State of Texas, on the _____ day of_____, 20_____.

_____
Declarant

ORIGINAL (DK002)

Copy from re:SearchTX

FILED
4/4/2019 10:47 AM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Maria Abilez

Case 5:19-cv-00558-JKP-RBF   Document 1-1   Filed 05/24/19   Page 91 of 101

Cause Number: _____

District Court : _____



## Mary Angie Garcia
## Bexar County District Clerk

2CIT/PPS M/O SAC3

### __Request for Process__

Style: _____ Vs. _____

**Request the following process:** (Please check all that Apply)

☐ Citation ☐ Notice ☐ **Temporary Restraining Order** ☐ **Notice of Application for Protective Order**
☐ **Temporary Protective Order** ☐ **Precept with hearing** ☐ **Precept with*out* a hearing** ☐ **Writ of Attachment**
☐ **Writ of Habeas Corpus** ☐ **Writ of Garnishment** ☐ **Writ of Sequestration** ☐ **Capias** ☐ **Other:** _____

**1.**
**Name:** _____
**Registered Agent/By Serving:** _____
**Address** _____

**Service Type:** (Check One) ☐ *Private Process*   ☐ *Sheriff*  ☐ *Commissioner of Insurance*  ☐ *SA Express News*  ☐ *Hart Beat* ☐ *Courthouse Door*
☐ *Certified Mail*   ☐ *Registered Mail*   ☐ *Out of County*   ☐ *Secretary of State*   ☐ *Constable Pct* __
*(Pct. 3 serves process countywide)*

**2.**
**Name:** _____
**Registered Agent/By Serving:** _____
**Address** _____

**Service Type:** (Check One) ☐ *Private Process*   ☐ *Sheriff*  ☐ *Commissioner of Insurance*  ☐ *SA Express News*  ☐ *Hart Beat* ☐ *Courthouse Door*
☐ *Certified Mail*   ☐ *Registered Mail*   ☐ *Out of County*   ☐ *Secretary of State*   ☐ *Constable Pct* __
*(Pct. 3 serves process countywide)*

**3.**
**Name:** _____
**Registered Agent/By Serving:** _____
**Address** _____

**Service Type:** (Check One) ☐ *Private Process*   ☐ *Sheriff*  ☐ *Commissioner of Insurance*  ☐ *SA Express News*  ☐ *Hart Beat* ☐ *CourthouseDoor*
☐ *Certified Mail*   ☐ *Registered Mail*   ☐ *Out of County*   ☐ *Secretary of State*   ☐ *Constable Pct*__
*(Pct. 3 serves process countywide)*

**4.**
**Name:** _____
**Registered Agent/By Serving:** _____
**Address** _____

**Service Type:** (Check One) ☐ *Private Process*   ☐ *Sheriff*  ☐ *Commissioner of Insurance*  ☐ *SA Express News*  ☐ *Hart Beat* ☐ *Courthouse Door*
☐ *Certified Mail*   ☐ *Registered Mail*   ☐ *Out of County*   ☐ *Secretary of State*   ☐ *Constable Pct* __
*(Pct. 3 serves process countywide)*

**Title of Document/Pleading to be Attached to Process:** _____

_____

**Name of Attorney/Pro se:** _____   **Bar Number:** _____
**Address:** _____   **Phone Number:** _____
_____

**Attorney for Plaintiff** _____ **Defendant** _____ **Other** _____

****IF SERVICE IS NOT PICKED UP WITHIN 14 BUSINESS DAYS, SERVICE WILL BE DESTROYED****

Copy from re:SearchTX

FILED
4/4/2019 10:47 AM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Maria Abilez

Case 5:19-cv-00558-JKP-RBF   Document 1-1   Filed 05/24/19   Page 92 of 101

Cause Number: 2019-CI-06848

District Court : 131st Judicial District



## Mary Angie Garcia
## Bexar County District Clerk

2CIT/PPS M/O SAC3

## Request for Process

Style: Top Class Hospitality, LLC          Vs. AmGuard Insurance Company and David Nesbit

**Request the following process:** (Please check all that Apply)

■ Citation ☐ Notice ☐ Temporary Restraining Order ☐ Notice of Application for Protective Order
☐ Temporary Protective Order ☐ Precept with hearing ☐ Precept with*out* a hearing ☐ Writ of Attachment
☐ Writ of Habeas Corpus ☐ Writ of Garnishment ☐ Writ of Sequestration ☐ Capias ☐ Other: _____

**1.**
**Name:** AMGUARD INSURANCE COMPANY
**Registered Agent/By Serving:** CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136
**Address**
**Service Type:** (Check One) ■ *Private Process* ☐ *Sheriff* ☐ *Commissioner of Insurance* ☐ *SA Express News* ☐ *Hart Beat* ☐ *Courthouse Door*
☐ *Certified Mail* ☐ *Registered Mail* ☐ *Out of County* ☐ *Secretary of State* ☐ *Constable Pct __*
*(Pct. 3 serves process countywide)*

**2.**
**Name:** DAVID NESBIT
**Registered Agent/By Serving:** _____
**Address** 29616 No Le Hace Drive, Fair Oaks Ranch, Bexar County, Texas, 78015
**Service Type:** (Check One) ■ *Private Process* ☐ *Sheriff* ☐ *Commissioner of Insurance* ☐ *SA Express News* ☐ *Hart Beat* ☐ *Courthouse Door*
☐ *Certified Mail* ☐ *Registered Mail* ☐ *Out of County* ☐ *Secretary of State* ☐ *Constable Pct __*
*(Pct. 3 serves process countywide)*

**3.**
**Name:** _____
**Registered Agent/By Serving:** _____
**Address** _____
**Service Type:** (Check One) ☐ *Private Process* ☐ *Sheriff* ☐ *Commissioner of Insurance* ☐ *SA Express News* ☐ *Hart Beat* ☐ *CourthouseDoor*
☐ *Certified Mail* ☐ *Registered Mail* ☐ *Out of County* ☐ *Secretary of State* ☐ *Constable Pct__*
*(Pct. 3 serves process countywide)*

**4.**
**Name:** _____
**Registered Agent/By Serving:** _____
**Address** _____
**Service Type:** (Check One) ☐ *Private Process* ☐ *Sheriff* ☐ *Commissioner of Insurance* ☐ *SA Express News* ☐ *Hart Beat* ☐ *Courthouse Door*
☐ *Certified Mail* ☐ *Registered Mail* ☐ *Out of County* ☐ *Secretary of State* ☐ *Constable Pct __*
*(Pct. 3 serves process countywide)*

**Title of Document/Pleading to be Attached to Process:** PLAINTIFF'S ORIGINAL PETITION & JURY DEMAND

**Name of Attorney/Pro se:** ANDREW P. SLANIA          **Bar Number:** 24056338
**Address:** 2402 Dunlavy Street, Houston, Texas 77006          **Phone Number:** 713-554-9099

**Attorney for Plaintiff** A. SLANIA          **Defendant** _____          **Other** _____

****IF SERVICE IS NOT PICKED UP WITHIN 14 BUSINESS DAYS, SERVICE WILL BE DESTROYED****

PRIVATE PROCESS

Case Number: 2019-CI-06848


2019CI06848  S00001

**TOP CLASS HOSPITALITY LLC**

**VS.**

**AMGUARD INSURANCE COMPANY ET AL**
(Note:Attached Document May Contain Additional Litigants.)

IN THE DISTRICT COURT
131st JUDICIAL DISTRICT
BEXAR COUNTY, TEXAS

## CITATION

"THE STATE OF TEXAS"

Directed To:   AMGUARD INSURANCE COMPANY
BY SERVING: CT CORPORATION SYSTEM

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this CITATION and ORIGINAL PETITION AND JURY DEMAN , a default judgment may be taken against you." Said ORIGINAL PETITION AND JURY DEMAN  was filed on the 3rd day of April, 2019.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS 8TH DAY OF APRIL A.D., 2019.

ANDREW P SLANIA
ATTORNEY FOR PLAINTIFF
2402 DUNLAVY ST
HOUSTON, TX 77006-2404

M|0 4|9



Mary Angie Garcia
Bexar County District Clerk
101 W. Nueva, Suite 217
San Antonio, Texas  78205

By: *Laura Castillo*, Deputy

---

TOP CLASS HOSPITALITY LLC
VS
AMGUARD INSURANCE COMPANY ET AL

**Officer's Return**

Case Number: 2019-CI-06848
Court: 131st Judicial District Court

I received this CITATION on _____ at _____o'clock ___M. and:( ) executed it by delivering a copy of the CITATION with attached ORIGINAL PETITION AND JURY  DEMAN   the  date  of  delivery  endorsed  on  it  to  the  defendant, _____, in  person  on  the _____ at _____ o'clock ___M. at:_____ or  (  )  not  executed  because _____.

Fees:_____ Badge/PPS #:_____ Date certification expires:_____

_____ County, Texas

By:_____

OR: VERIFICATION OF RETURN (If not served by a peace officer) SWORN TO THIS _____

_____

NOTARY PUBLIC, STATE OF TEXAS

OR: My name is _____, my date of birth is _____, and my address is _____, _____ County.

I declare under penalty of perjury that the foregoing is true and correct. Executed in _____ County, State of Texas, on the _____ day of_____, 20_____.

_____
Declarant

FILE COPY (DK002)

DOCUMENT SCANNED AS FILED

FILED
5/1/2019 11:31 AM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Michael Yanas

Case 5:19-cv-00558-JKP-RBF   Document 1-1   Filed 05/24/19   Page 94 of 101

# 151st District Court of BEXAR County, Texas

100 DOLOROSA ST, #202 SAN ANTONIO TX 78205

## CASE #: 2019CI06848

**TOP CLASS HOSPITALITY, LLC**

*Plaintiff*
**vs**
**AMGUARD INSURANCE COMPANY AND DAVID NESBIT**

*Defendant*

### AFFIDAVIT OF SERVICE

I, **ALBERTO CASAS LICON**, make statement to the fact;
That I am a competent person more than 18 years of age or older and not a party to
this action, nor interested in outcome of the suit.  That I received the documents stated
below on 04/24/19 11:08 am, instructing for same to be delivered upon Nesbit, David.

That I delivered to          : Nesbit, David.

the following               : CITATION; PLAINTIFF'S ORIGINAL PETITION AND JURY DEMAND;
                              EXHIBIT A

at this address             : 29616 No Le Hace Dr
                              Fair Oaks Ranch, Bexar County, TX 78015

Manner of Delivery          : By PERSONALLY delivering the document(s) to the person
                              above.

Delivered on                : Friday April 26, 2019 3:09 pm


My name is ALBERTO CASAS LICON, my date of birth is June 2nd, 1970, and my address
is PCP San Antonio - Corp, 830 NE Loop 410 Ste 209, San Antonio TX 78209, and U.S.A.
I declare under penalty of perjury that the foregoing is true and correct.
Executed in El Paso County, State of Texas, on the _____ day of
_____, 20____.


                              _____
                              ALBERTO CASAS LICON              Declarant
                              2766

                              Texas Certification#: PSC-12313 Exp. 09/30/2019

                                   PCP Inv#: P19400192
                                   SO  Inv#: A19407091
                                   Reference : 2019-06848
                     + Service Fee:  75.00
                       Witness Fee:    .00
                       Mileage Fee:    .00
serversa                             Raizner, Jeffrey L.
eaffidavits@pcpusa.net                              **E-FILE RETURN**

AX02A19407091

PRIVATE PROCESS

Case Number: 2019-CI-06848



2019CI06848 S00002

**TOP CLASS HOSPITALITY LLC**
**VS.**
**AMGUARD INSURANCE COMPANY ET AL**
(Note:Attached Document May Contain Additional Litigants.)

IN THE DISTRICT COURT
131st JUDICIAL DISTRICT
BEXAR COUNTY, TEXAS

## CITATION

"THE STATE OF TEXAS"

Directed To:   DAVID NESBIT

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this CITATION and ORIGINAL PETITION AND JURY DEMAND , a default judgment may be taken against you." Said ORIGINAL PETITION AND JURY DEMAND was filed on the 3rd day of April, 2019.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS 8TH DAY OF APRIL A.D., 2019.

ANDREW P SLANIA
ATTORNEY FOR PLAINTIFF
2402 DUNLAVY ST
HOUSTON, TX 77006-2404



Mary Angie Garcia
Bexar County District Clerk
101 W. Nueva, Suite 217
San Antonio, Texas  78205

By: *Laura Castillo*, Deputy

---

TOP CLASS HOSPITALITY LLC
VS
AMGUARD INSURANCE COMPANY ET AL

**Officer's Return**

Case Number: 2019-CI-06848
Court: 131st Judicial District Court

I received this CITATION on _____ at _____ o'clock ___M. and ( ) executed it by delivering a copy of the CITATION with attached ORIGINAL PETITION AND JURY DEMAND  the date of delivery endorsed on it to the defendant, _____, in person on the _____ at _____ o'clock ___M. at _____ or ( ) not executed because _____.

Fees:_____ Badge/PPS #:_____ Date certification expires:_____,

_____ County, Texas

By:_____

OR: VERIFICATION OF RETURN (If not served by a peace officer) SWORN TO THIS _____

_____
NOTARY PUBLIC, STATE OF TEXAS

OR: My name is _____, my date of birth is _____, and my address is _____, _____ County.

I declare under penalty of perjury that the foregoing is true and correct. Executed in _____ County, State of Texas, on the _____ day of_____, 20_____.

_____
Declarant

RETURN TO COURT (DK002)

FILED
5/17/2019 4:05 PM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Michael Yanas

Case 5:19-cv-00558-JKP-RBF   Document 1-1   Filed 05/24/19   Page 96 of 101

CAUSE NO. 2019-CI-06848

| | | |
|---|---|---|
| TOP CLASS HOSPITALITY, LLC, | § | IN THE DISTRICT COURT OF |
| *Plaintiff*, | § | |
| | § | |
| v. | § | BEXAR COUNTY, TEXAS |
| | § | |
| AMGUARD INSURANCE COMPANY and | § | |
| DAVID NESBIT, | § | |
| *Defendants*. | § | 131st JUDICIAL DISTRICT |

## AmGUARD INSURANCE COMPANY'S MOTION TO TRANSFER VENUE AND, SUBJECT THERETO, ORIGINAL ANSWER

To the Honorable Judge of the Court:

AmGUARD Insurance Company ("AmGUARD"), which Plaintiff named as a defendant in this lawsuit, files its Motion to Transfer Venue and, Subject Thereto, Original Answer in response to Plaintiff's Original Petition.

## I.   MOTION TO TRANSFER VENUE

Venue in this case is not proper in Bexar County. This lawsuit arises from alleged damage to a Holiday Inn Express located in Comal County, Texas. *See* Pet. ¶¶ 7-25. Plaintiff alleges that AmGUARD wrongfully denied Plaintiff's insurance claim arising from the alleged damage. *Id.* Notably, not a single one of the alleged events or omissions giving rise to Plaintiff's purported claims occurred in Bexar County. *See generally id.* The only tie to Bexar County is the presence of Defendant David Nesbit, who allegedly resides in Bexar County, and who, as alleged by Plaintiff, played no role in the coverage decisions that form the basis of this lawsuit. *Id.* at ¶ 5, 15-22.

AmGUARD has accepted liability for Mr. Nesbit as allowed under Chapter 542A of the Texas Insurance Code, and it gave written notice of this to Plaintiff dated May 17, 2019. Thus, Plaintiff cannot sustain a claim against Mr. Nesbit and, under Chapter 542A, he is to be

dismissed from this case. Accordingly, his residency cannot be considered for venue purposes. And, Comal County is the most convenient and efficient venue for this lawsuit.  For any or all of these reasons, the Court should transfer the case to Comal County.

**A.**      **Legal Standard for Motions to Transfer Venue**

When a plaintiff's choice of venue is challenged by a motion to transfer, "the plaintiff has the burden to present prima facie proof that venue is maintainable in the county of suit." *Chiriboga v. State Farm Mut. Auto Ins. Co.*, 96 S.W.3d 673, 678 (Tex. App.—Austin 2003, no pet.) (citing *In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex. 1999)). If the plaintiff fails to meet this burden, the trial court must transfer the lawsuit to a specified county of proper venue.  *See Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 260 (Tex. 1994).  "In such a case, the right to cho[o]se a proper venue passes to the defendant who must prove that venue is maintainable in the county to which transfer is sought."  *Id.* at 260 n.1.

**B.**      **Venue is not proper in Bexar County because Defendant David Nesbit, upon whom Plaintiff based venue, is not a proper party.**

Venue is improper if it is based on the residency of a defendant, such as Mr. Nesbit, that cannot possibly be liable to the plaintiff.  *See, e.g.*, *Acker v. Denton Publishing Co.*, 937 S.W.2d 111, 117 (Tex. App.—Ft. Worth 1996, no writ) (venue is improper when based on residency of a party where there is "no genuine issue of material fact that would support a cause of action" against that party); *ACF Indus., Inc. v. Carter*, 903 S.W.2d 423, 424 (Tex. App.—Texarkana 1995, writ dism'd by agr.) (plaintiff's choice of venue is reversible error when based on a party that "was not a proper defendant").

Mr. Nesbit is not a proper party to this lawsuit because AmGUARD has accepted liability for Mr. Nesbit in accordance with Section 542A.006 of the Insurance Code.  Under Chapter

2

542A, an insurer "may elect to accept whatever liability an agent[1] might have to the claimant for the agent's acts or omissions related to the claim." TEX. INS. CODE § 542A.006(a).  If the insurer makes such an election after a related lawsuit has been filed, the court "shall dismiss the action against the agent with prejudice." *Id.* at § 542A.006(c).  Because AmGUARD notified Plaintiff in writing on May 17, 2019, that it was electing to accept liability for Mr. Nesbit, Plaintiff cannot state a claim against Mr. Nesbit. *Id.*  Consequently, Mr. Nesbit is not a proper defendant, and his residence cannot be considered for venue purposes. *See, e.g.*, *Acker*, 937 S.W.2d at 117.

If and to the extent a cause of action exists against AmGUARD, venue is proper in Comal County under Section 15.002 of the Texas Civil Practice and Remedies Code because, as alleged by Plaintiff, it is the county in which all or a substantial part of the events or omissions giving rise to Plaintiff's claim occurred. *See* Pet. ¶¶ 7-25.  Further, venue is proper in Comal County because that is where the property at issue is located and the alleged loss occurred. *See* Pet. ¶ 7; TEX. CIV. PRAC. & REM. CODE § 15.032; *Chiriboga*, 96 S.W.3d at 682 n.5.

**C.     Comal County is the most convenient and efficient venue for this lawsuit.**

Under Section 15.002(b) of the Texas Civil Practice and Remedies Code, a court may transfer a case between counties of proper venue in the interests of justice and for the convenience of the parties and witnesses. Thus, even if venue were otherwise proper in the county in which the suit was filed, a court may transfer the case when it finds that: (1) maintenance of the action in the county of suit would work an injustice to the movant considering the movant's economic and personal hardship; (2) the balance of interests of all the

---

[1] As alleged by Plaintiff, AmGUARD hired Mr. Nesbit to investigate Plaintiff's insurance claim. *See* Pet. ¶ 16. Therefore, Mr. Nesbit qualifies as AmGUARD's "agent" for the purposes of Chapter 542A of the Texas Insurance Code, and AmGUARD can accept liability for Mr. Nesbit's actions. *See* TEX. INS. CODE § 542A.001(1) (defining "agent" as an "employee, agent, representative, or adjuster who performs any act on behalf of an insurer").

parties predominates in favor of the action being brought in the other county; and (3) the transfer would not work an injustice to any other party.  TEX. CIV. PRAC. & REM. CODE § 15.002(b).

Here, all or a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in Comal County.  *See* Pet. ¶¶ 7-25.  The property at issue—the Holiday Inn Express—is also located in Comal County.  *Id.* at ¶ 7.  As such, the balance of interests of the parties predominates in favor of transferring this case to Comal County, and no injustice would come to Plaintiff by trying this matter in Comal County.  Therefore, transfer of this lawsuit to Comal County would serve the convenience of the parties and witnesses and be consistent with the interest of justice.  *See* TEX. CIV. PRAC. & REM. CODE § 15.002(b).

For all these reasons, and on any or all of these grounds, AmGUARD requests that the Court transfer this lawsuit to Comal County, which is a proper venue under Sections 15.002(a)(1) and (b) and 15.032 of the Texas Civil Practice and Remedies Code.

## II.      ORIGINAL ANSWER

### GENERAL DENIAL

1.      Under Texas Rule of Civil Procedure 92, AmGUARD generally denies each and every allegation in the Original Petition and demands strict proof of each and every allegation. AmGUARD reserves the right to supplement or amend this pleading before trial of this case.

### AFFIRMATIVE AND OTHER DEFENSES

2.      In addition to its general denial, AmGUARD asserts the following defenses without conceding or waiving the issue of which party bears the burden of proof.

3.      Plaintiff's claims are barred in whole or in part because any loss incurred by Plaintiff was the result of a risk or cause coming within an exception or exclusion to the general liability under the applicable insurance contract.

71540086v.6 0041174/00232

4.     Plaintiff's claims are barred in whole or part by the doctrine of bona fide dispute.

5.     Plaintiff's claims are barred in whole or in part under Section 542A.006 of the Texas Insurance Code.

6.     Plaintiff's claims are barred in whole or in part by the proportionate responsibility provisions of Chapter 33 of the Texas Civil Practice and Remedies Code and applicable Texas law.

7.     Plaintiff's claims are barred in whole or in part by the economic loss doctrine.

8.     Plaintiff's claims are barred in whole or in part by its failure to mitigate its damages, if any.

9.     Plaintiff's claims for attorneys' fees are barred in whole or in part under Section 542A.007 of the Texas Insurance Code, and by the excessive demand doctrine.

10.     AmGUARD denies liability for punitive, exemplary, or treble damages. Further, any claim for such damages is subject to the limitations and constraints of Due Process found in the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 19 of the Texas Constitution, and Chapter 41 of the Texas Civil Practice and Remedies Code, without limitation.

### III.     REQUEST FOR RELIEF

For these reasons, AmGUARD requests that the Court transfer the venue of this case to Comal County, that Plaintiff take nothing by its claims, that the Court grant judgment in AmGUARD's favor, that AmGUARD recover its costs expended in connection with this lawsuit, and that the Court grant AmGUARD such other and further relief, general or special, to which it may be justly entitled.

71540086v.6 0041174/00232

Respectfully submitted,

LOCKE LORD LLP

By:  /s/ Kent Hofmann
          Kent Hofmann
          State Bar No. 24032424
          khofmann@lockelord.com
          Joel Thomason
          State Bar No. 24086612
          jthomason@lockelord.com
          600 Congress Ave., Suite 2200
          Austin, Texas 78701
          (512) 305-4700 (telephone)
          (512) 305-4800 (facsimile)

ATTORNEYS FOR DEFENDANT
AmGUARD INSURANCE COMPANY

## Certificate of Service

I certify that a true and correct copy of this Original Answer was served on the following on May 17, 2019, by e-service:

Jeffrey L. Raizner
Andrew P. Slania
Amy B. Hargis
Ben Wickert
Raizner Slania LLP
2402 Dunlavy Street
Houston, Texas  77006
*Attorneys for Plaintiff*

/s/ Kent Hofmann
Kent Hofmann

71540086v.6 0041174/00232